## MITCHELL v. UNITED STATES.

A resident of a loyal State, who, after the 17th of July, 1861, and just after the late civil war had become flagrant, went, under a military pass of a Federal officer into the rebel States, and in November and December, 1864, bought a large quantity of cotton there (724 bales), and never re turned to the loyal States until just after that and when the war was not far from its close—when he did return to his old domicile—having, during the time that he was in the rebel States transacted business, collected debts, and purchased the cotton, *held*, on a question whether he had been trading with the enemy, not to have lost his original domicile, and accordingly to have been so trading.

APPEAL from the Court of Claims. That court found the following facts:

At the beginning of the late rebellion, Mitchell, the claimant and appellant, lived in Louisville, Kentucky. He was engaged in business there. In July, 1861, and after the 17th of that month, he procured from the proper military authority of the United States in Kentucky a pass permitting him to go through the army lines into the insurrectionary territory. He thereupon went into the insurgent States and remained there until the latter part of the year 1864. He then returned to Louisville. While in the Confederate States he transacted business, collected debts, and purchased from different parties 724 bales of cotton. He took possession of the cotton and stored it in Savannah. Upon the capture of that place by General Sherman the cotton was

seized by the military authorities. It was subsequently sold by the agents of the government. The proceeds, amounting to the sum of $128,692.22, were now in the treasury. Mitchell bought the cotton in November and December, 1864. He remained within the insurrectionary lines from July, 1861, until after the capture of Savannah by the arms of the United States.

The Court of Claims was equally divided in opinion as to whether the claim of Mitchell could be sustained, and accordingly dismissed his petition. Mitchell then removed the case to this court by appeal, assigning for error that on the facts found the Court of Claims should not have dismissed the petition, but should have decided that he acquired a valid title to the cotton.

*Mr. J. B. Harlan, for the appellant; Mr. G. H. Williams, Attorney-General, and Mr. John Goforth, Assistant Attorney-General, contra.*

Mr. Justice SWAYNE, having stated the case, delivered the opinion of the court, as follows:

At the time when Mitchell passed within the rebel lines the war between the loyal and the disloyal States was flagrant. It speedily assumed the largest proportions. Important belligerent rights were conceded by the United States to the insurgents. Their soldiers when captured were treated as prisoners of war, and were exchanged and not held for treason. Their vessels when captured were dealt with by our prize courts. Their ports were blockaded and the blockades proclaimed to neutral nations. Property taken at sea, belonging to persons domiciled in the insurgent States, was uniformly held to be confiscable as enemy property. All these things were done as if the war had been a public one with a foreign nation.* The laws of war were applied in like manner to intercourse on land between the inhabitants of the loyal and the disloyal States. It was adjudged that all

---

* The Prize Cases, 2 Black, 687; Mrs. Alexander's Cotton, 2 Wallace, 417; Mauran *v*. The Insurance Company, 6 Id. 1.

contracts of the inhabitants of the former with the inhabitants of the latter were illegal and void. It was held that they conferred no rights which could be recognized. Such is the law of nations, *flagrante bello*, as administered by courts of justice.*

While such was the law as to dealings between the inhabitants of the respective territories, contracts between the inhabitants of the rebel States not in aid of the rebellion were as valid as those between themselves of the inhabitants of the loyal States. Hence this case turns upon the point whether the appellant was domiciled in the Confederate States when he bought the cotton in question.

When he took his departure for the South he lived and was in business at Louisville. He returned thither when Savannah was captured and his cotton was seized. It is to the intervening tract of time we must look for the means of solving the question before us. There is nothing in the record which tends to show that when he left Louisville he did not intend to return, or that while in the South he had any purpose to remain, or that when he returned to Louisville he had any intent other than to live there as he had done before his departure. Domicile has been thus defined: "A residence at a particular place accompanied with positive or presumptive proof of an intention to remain there for an unlimited time."† This definition is approved by Phillimore in his work on the subject.‡ By the term *domicile*, in its ordinary acceptation, is meant the place where a person lives and has his home.§ The place where a person lives is taken to be his domicile until facts adduced establish the contrary.‖

---

* Vattel, ? 220; Griswold *v.* Waddington, 16 Johnson, 438; Cooledge *v.* Guthrie, 8 American Law Register, N. S. 20; Coppel *v.* Hall, 7 Wallace, 542; United States *v.* Grossmayer, 9 Id. 72; Montgomery *v.* United States, 15 Id. 400; United States *v.* Lapene, 17 Id. 602; Cutner *v.* United States, Ib 516.

† Guyer *v.* Daniel, 1 Binney, 349, note.          ‡ Page 13.

? Story's Conflict of Laws, ? 41.

‖ Bruce *v.* Bruce, 2 Bosanquet & Puller, 228, note; Bampde *v.* Johnstone, 3 Vesey, 201; Stanley *v.* Bernes, 3 Haggard's Ecclesiastical Reports, 374, 437; Best on Presumptions, 235.

The proof of the domicile of the claimant at Louisville is sufficient. There is no controversy between the parties on that proposition. We need not, therefore, further consider the subject.

A domicile once acquired is presumed to continue until it is shown to have been changed.* Where a change of domicile is alleged the burden of proving it rests upon the person making the allegation.† To constitute the new domicile two things are indispensable: First, residence in the new locality; and, second, the intention to remain there. The change cannot be made except *facto et animo*. Both are alike necessary. Either without the other is insufficient. Mere absence from a fixed home, however long continued, cannot work the change. There must be the *animus* to change the prior domicile for another. Until the new one is acquired, the old one remains.‡ These principles are axiomatic in the law upon the subject.

When the claimant left Louisville it would have been illegal to take up his abode in the territory whither he was going. Such a purpose is not to be presumed. The presumption is the other way. To be established it must be proved.§ Among the circumstances usually relied upon to establish the *animus manendi* are: Declarations of the party; the exercise of political rights; the payment of personal taxes; a house of residence, and a place of business.‖ All these indicia are wanting in the case of the claimant.

The rules of law applied to the affirmative facts, without the aid of the negative considerations to which we have adverted, are conclusive against him. His purchase of the cotton involved the same legal consequences as if it had been made by an agent whom he sent to make it.

JUDGMENT AFFIRMED.

---

* Somerville v. Somerville, 5 Vesey, 787; Harvard Coll. v. Gore, 5 Pickering, 370; Wharton's Conflict of Laws, § 55.

† Crookenden v. Fuller, 1 Swabey & Tristam, 441; Hodgson v. De Buchesne, 12 Moore's Privy Council, 288 (1858).

‡ Wharton's Conflict of Laws, § 55, and the authorities there cited.

§ 12 Moore's Privy Council, *supra*.

‖ Phillimore, 100; Wharton, § 62, and post.