## Graham's Petition.

*Election laws—Nominating petition—Candidate for Congress—Residence —Temporary residence outside State—Constitutional law—Section 2, article i, Constitution of the United States.*

1. A man may live in a hotel and be an inhabitant of the place where the hotel is located, even though he has a summer home elsewhere in which he or his family spend a large portion of the year.

2. One who has lived all his life as a resident of Philadelphia and has exercised all of the incidents of residence and inhabitancy there, including voting and the payment of taxes, does not cease to be an inhabitant of the State of Pennsylvania, within the meaning of section 2, article 1, of the Federal Constitution, by reason of the fact that he also has a temporary residence and a summer home in New York State and has automobiles registered in his name as a resident of that state.

Application to set aside nominating petition. C. P. Dauphin Co., March T., 1922, No. 245.

*M. E. Stroup,* for application.

*E. E. Beidleman, Joseph Gilfillan* and *James Gay Gordon,* contra.

HARGEST, P. J., April 22, 1922.—Objections were filed by Isadore Stern, a qualified elector of the Second Congressional District, to the petitions to have the name of George S. Graham printed on the official ballot as a candidate at the primary election for the office of Representative from that district. It is averred that the said nominating petitions show material defects, and the affidavits of the said George S. Graham are materially defective because they state that his residence is St. James Hotel Annex, 13th and Walnut Streets, in the City of Philadelphia, whereas he is in fact, and has been for some years past, a *bona fide* resident of the State of New York, having his permanent place of abode with his family at or in the vicinity of 53rd Street, near Fifth Avenue, in the City of New York, and at Islip, Long Island, in said state, and, therefore, the said George S. Graham is not eligible as a candidate for said nomination.

*Facts.*

The evidence shows, and we find the facts to be, that George S. Graham was born in the City of Philadelphia; that he was for three years a Select Councilman from the 28th Ward of that city; that for eighteen years he was District Attorney, relinquishing that office in 1898; that since 1913 he has been the Representative in Congress from the Second Congressional District, having been elected five successive times. He lived for some years at No. 1718

Spruce Street, Philadelphia, subsequently at the Bellevue-Stratford Hotel, then at the Ritz-Carlton Hotel, and since 1918 has had an apartment at the St. James Hotel Annex, 13th and Walnut Streets, in said city, in which apartment practically all of the furniture, except books, belong to the hotel company. He had a lease by the year for his apartments, both at the Bellevue-Stratford and the St. James Hotels. He also had a summer home at Bryn Mawr, Pennsylvania, and after selling it some years ago, purchased a summer home at Islip, Long Island. His immediate family now dependent upon him consists of his wife and one daughter. He had a temporary residence some years ago in an apartment house owned by his wife at No. 35 West 52nd Street, in the City of New York. He was taken quite ill in 1920 and was confined to bed in the St. James Hotel Annex, and, subsequently, at Islip for a number of weeks. He afterward injured his kneecap by a fall and went to Augusta, Ga., to recuperate. His wife and daughter accompanied him, and after their return from Georgia the latter part of 1920 or the beginning of 1921, they went abroad and remained until April, 1921. They returned to Islip, and in January of this year his family went upon a Mediterranean cruise and are now abroad. Mr. Graham has been a practicing lawyer in Philadelphia since his admission to the bar, and is a member of the firm of Graham & Gilfillan, which occupies one entire floor and part of another in the West End Trust Building in that city. He spends on an average three or four days [a week] in Washington attending the sessions of Congress, and the three or four evenings and nights in Philadelphia, looking after his professional business. He is also a member of the law firm of Graham, McMahon, Buell & Knox, located in New York City. It is his habit to spend Saturday afternoon and Sunday at Islip, and Monday morning in his New York office. He has kept his Islip home open for his own convenience during the last winter. He owns two automobiles, and in registering them in the State of New York, gave Islip as his residence. He has always voted in Philadelphia, and is now a registered voter in the 8th Division of the 8th Ward, in the Second Congressional District. He pays his personal property tax and Federal income tax in the City of Philadelphia, and pays an income tax in the State of New York as a non-resident. He testified that they occupied the house in New York temporarily on account of his business duties to avoid stopping at hotels, and that his country-place in Long Island is also a temporary abode; that his permanent residence is, as it always has been, in Philadelphia; that he has not changed, and has no intention of changing, that residence; that his wife and daughter have not been in Philadelphia frequently within the last two years for the reasons above stated.

*Discussion.*

Section 2, art. I, of the Constitution of the United States, provides: "No person shall be a Representative . . . who shall not, when elected, be an inhabitant of that state in which he shall be chosen."

The question before us is whether George S. Graham is an inhabitant of the State of Pennsylvania. The word "inhabitant" is ordinarily used to indicate a person with a fixed domicile or legal residence, and an "inhabitant," therefore, is one who has an established residence at a given place: Bechtel *v.* Bechtel, 101 Minn. 511, 112 N. W. Repr. 883, 884. Perhaps the best definition is that of Chief Justice Shaw, in Lyman *v.* Fiske, 17 Pick. 231, 28 Am. Dec., 293: "It is difficult to give an exact definition of habitancy. In general terms one may be designated as an inhabitant of that place which constitutes the

2 D. & C.

principal seat of his residence, of his business pursuits, connections, attachments and of his political and municipal relations. It is manifest, therefore, that it embraces the fact of residence at a place with the intent to regard it and make it his home. The act and intent must concur, and the extent may be inferred from declarations and conduct. It is often a question of great difficulty, depending upon minute and complicated circumstances, leaving the question in so much doubt that a slight circumstance may turn the balance. In such a case, the mere declaration of the party, made in good faith, of his election to make the one place rather than the other his home, would be sufficient to turn the scale:" Phillips v. City of Boston, 183 Mass. 314, 67 N. E. Repr. 250, 251.

The modern changing and complicated conditions of business and family life make the application of general rules difficult: Agassiz v. Trefy, 260 Fed. Repr. 226, 230.

In Mitchell v. United States, 88 U. S. 350, 353, it is said: "A domicile once acquired is presumed to continue until it is shown to have been changed. Where a change of domicile is alleged, the burden of proving it rests upon the person making the allegation. To constitute the new domicile, two things are indispensable: First, residence in the new locality; and, second, the intention to remain there. The change cannot be made except facto et animo. Both are alike necessary. Either without the other is insufficient. Mere absence from a fixed home, however long continued, cannot work the change. There must be the animus to change the prior domicile for another. Until the new one is acquired, the old one remains. These principles are axiomatic in the law upon the subject:" Fry's Election Case, 71 Pa. 302; Chase v. Miller, 41 Pa. 403, 420; Sun Print. Pub. Ass'n v. Edwards, 194 U. S. 377, 383; Williamson v. Osenton, 232 U. S. 619.

Applying these principles, we see no difficulty in this case. A man may live in a hotel and be an inhabitant of the place where the hotel is located, even though he has a summer home elsewhere in which he or his family spend a large portion of the year. This is not a case of renting a room and occasionally eating or sleeping in it to retain a voting residence, as in Com. v. Devine, 14 Dist. R. 1. The fact that Mr. Graham gave Islip as his residence for the purpose of registering his automobiles, throws no light upon his intention to make that his permanent home. To register an automobile in the state it would be necessary to designate the place where the automobile was to be kept. Having lived all his life, up to this time, as a resident of Philadelphia, and having exercised all of the incidents of residence and inhabitancy there, including voting and the payment of taxes, there is nothing shown in this case to lead to any finding that he has not continued to be an inhabitant of the City of Philadelphia. The objections to the nominating petitions must, therefore, be dismissed.

### Order.

And now, to wit, April 22, 1922, the petition of Isadore Stern, alleging that the nominating petitions filed in the office of the Secretary of the Commonwealth, for the purpose of having the name of George S. Graham placed on the official primary ballot as candidate for the office of Representative in Congress of the Republican Party from the Second Congressional District of the State of Pennsylvania, are invalid, is hereby dismissed, at the cost of the petitioner. The prothonotary is directed to certify this order to the Secretary of the Commonwealth. From William Jenkins Wilcox, Harrisburg, Pa.