No. 2911

Second Circuit

UMBARGER v. TOWER

(December 23, 1930. Opinion and Decree.)

Herndon & Herndon, of Shreveport, attorneys for plaintiff, appellee.

Jos. B. Crow, of Shreveport, attorney for defendant, appellant.

DREW, J. On the 29th day of April, 1926, J. C. Umbarger filed suit, alleging that on May 13, 1916, he had obtained a judgment against the defendant, Mrs. Emma E. Tower, in the sum of $388.20, with legal interest from August 1, 1913, until paid, and that said judgment had never been paid, and that he desired to have the said judgment revived before it prescribed. He alleged that the defendant was a resident of Caddo parish, La., and prayed for service and citation in accordance with the law and for judgment reviving the said judgment and giving it full force and effect for ten years from the date of the order of court reviving the same.

Defendant answered, denying that any valid judgment was ever rendered against her, and that the pretended judgment that plaintiff is attempting to revive was, is, and always has been an absolute nullity, for the following reasons:

(1) That said judgment was rendered without any citation being served upon her and without notice to her of the pendency of the suit;

(2) That said pretended suit was entertained by the First district court of Caddo parish and said judgment rendered by it without jurisdiction because defendant was at the time and before the said suit was filed and judgment rendered, a resident of the county of Harris, state of Texas, where she was regularly domiciled and where she was maintaining an established business;

(3) That no notice of judgment was ever served on her, and no notice given her that any such judgment had been rendered;

(4) That the returns of the sheriff on the pretended citation and notice of judgment, in so far as they attempt to show

domiciliary service or any other sort of service on defendant, are false and untrue and contrary to the facts; and

(5) That the district court of Caddo parish, La., was without jurisdiction ratione personæ et materiæ.

Defendant, assuming the position of plaintiff in reconvention, alleges that she has been damaged in the sum of $75 for attorney's fees, and $150 for annoyance, mental worry, loss of time in attending court, and inconvenience on account of her property being seized under an attempt to execute the judgment, which is a nullity. She prays for the demands of plaintiff to be rejected, for the judgment sought to be revived to be decreed null and void, and for judgment in reconvention in the sum of $225.

On these issues the case was tried in the lower court, resulting in judgment for plaintiff as prayed for, and from that judgment defendant prosecutes this appeal.

Since the case was lodged in this court, the plaintiff has departed this life, and his wife and daughter were made parties plaintiff, and, since the case was submitted in this court, the wife has departed this life, and the daughter, Miss Avonia Umbarger, has been made sole party plaintiff by petition to this court alleging that she is the sole and only heir of her deceased father and mother.

There is only one question to be decided in this case. Plaintiff contends that the domicile of defendant at the time of the filing of the original suit was in Caddo parish, La. Defendant contends that her domicile at the time was in Harris county, Tex. It is admitted that her domicile at the time of filing this suit is in Caddo

parish, La. The original suit was filed on the 24th day of April, 1916. Service and citation were made on April 26th, and the return on said citation reads as follows:

"Received the within citation on the 4-24 day of April, 1916, and on the 26th day of April, 1916, served the same on the within named Mrs. E. E. Tower at her residence ———— miles from the Court House in the Parish of Caddo, State of Louisiana, by handing a certified copy hereof, together with a certified copy of plaintiff's petition to Emery Tower, upon inquiry learned his name to be Emery Tower a person over the age of 14 years living in the same house with the said Mrs. E. E. Tower she being temporarily absent from home at the time of said service.
"C. G. Owen,
"Dy. Sheriff."

On May 13, 1916, judgment by default was rendered against the defendant in the amount prayed for by plaintiff and on the 19th day of May, 1916, formal notice of judgment was served, and the return of the sheriff on said service is identical with the return made on the citation and service of petition on April 26, 1916.

Defendant moved to Caddo parish in the year 1908, first to Oil City, and later to Cedar Grove, where she constantly lived until a short time prior to the filing of this suit. On moving to Cedar Grove, she and one Emery Tower, a cousin of her former husband, erected a home together and resided in said home for many years. In fact, the defendant and Emery Tower had occupied the same house since she first moved to Caddo parish. There is no dispute over the fact that Caddo parish, La., was the domicile of defendant from 1908 until the spring of 1916.

In the spring of 1916, defendant went to Humble, Tex., where she remained until

the fall of that year, being absent from Caddo parish for a period of six or seven months. She contends that she moved to Humble with the full intent of making that her home, and that by actually residing in Humble with the avowed intent of making that place her home in the future was sufficient to change her domicile from Caddo parish, La., to the state of Texas. It is true that the act of residing at Humble, combined with the intent of making that place her home, is sufficient under the law, but how shall we arrive at the intent? We must take into consideration the circumstances surrounding the move and the other acts of defendant.

Defendant owned a good home in Cedar Grove, La. When she moved to Texas, she took very little of her household goods, only that which she could put in a trunk. She did not move her furniture, her dining room set, and only a part of her dishes and cooking utensils. Her home in Cedar Grove was left intact. On arriving at Humble, where at the time there was an oil boom in progress, she leased a small tract of land and had erected thereon a three-room oil field shack, consisting of a bedroom, kitchen and dining room. The house was very cheaply constructed. The man who built it described it as follows:

"Just a box house boarded up and down with battings at the cracks and the inside no finish at all that was all there was to it. The roof was covered with tar paper. The house was not painted."

The lumber in the house was of an inferior grade and the carpenter that built it received $2.50 per day. Defendant did not own the land upon which the house was built, and the record does not show the length of time she had the land leased. She occupied this house in the oil field at what was known as "Moonshine Hill," and took the oil field workers for boarders. The boom was not of long duration and as soon as it was over, she abandoned the house and returned to her home at Cedar Grove, where she has resided since.

Defendant founds her defense almost solely on the fact that she had built her a home in the oil fields of Texas. However, we are not much impressed with that fact. The very kind of shack that she had erected out there on property not owned by her, we think, militates against the idea that she intended to reside there permanently. When she left Texas, she did not sell, but simply abandoned the place and came back to her home.

Defendant had a sister living at Humble, and, learning of the oil boom at that place, business being dull in Cedar Grove, she no doubt went to Humble to make the boom and to pick up some quick, easy money. Her actions indicate such, to say the least. When she left Cedar Grove, she left the house intact, and Emery Tower continued to live in the house, an Italian boy boarder continued to live there for some time, and she left her two grandchildren there with Emery Tower until some time later their father found that defendant had gone to Texas, when he got his children. She did not leave any forwarding address at the post office, and numerous witnesses in Cedar Grove testified that they never heard or knew of the defendant moving away from Cedar Grove. She failed to produce any of her neighbors as witnesses to prove her intention or their knowledge that she had left Cedar Grove.

The one witness who should have known more of her intentions at that time than all others was Emery Tower. He was oc-

cupying the same house with her and had been since 1908, and continued to occupy the same house with her after she returned from Texas, and a few years later became her husband, and is now living with her as her husband. He is the man upon whom the service and citation were made and upon whom the notice of judgment was served, and the man who gave the information to the sheriff that she was temporarily absent from home. He above all others should and would have known if she had intended to leave the state of Louisiana permanently and take up her domicile in Texas. He was not called as a witness, nor was his absence accounted for. He would have known if she had left the state to make her home in Texas, and, when the officer served the papers, he would have made that fact known to the officer, but instead he informed the officer that she was only temporarily absent.

The testimony offered by defendant, mostly her relatives who should have known her intention, is that, in substance, if business remained good in Texas, she would remain, otherwise not. We take it that she intended to remain in Humble as long as the boom lasted, for, when the boom was over, business could not be good in the oil field. That is exactly what happened. As soon as the rush was over and business dropped off, she packed her trunk and returned to Cedar Grove.

After defendant had been in Humble for possibly a month, she executed a mortgage, by notarial act, says she signed it in Humble, Tex., and in that act of mortgage she declares that her domicile is in Caddo parish. She attempts to explain this mortgage, but without success.

In Succession of Simmons, 109 La. 1095, 34 So. 101, the court said:

"A change of domicile from another State of the Union to this State is brought about by the act of residing here, combined with the intention of making one's home here, of renouncing citizenship elsewhere.

"The party who contends for a change of domicile bears the burden of proving it. The domicile of origin continues until another is acquired, animo et facto. So long as a reasonable doubt remains the presumption is it has not changed."

"It requires a voluntary absence of two years to forfeit a domicile in this state. Civ. Code, art. 46. A change of residence does not operate a change of domicile unless combined with the intention of making one's habitual residence elsewhere. Civ. Code, arts. 38, 41, 42." Kinder v. Scharff et al., 125 La. 594, 51 So. 654.

"The essential fact that raises a change of abode to a change of domicil is the absence of any intention to live elsewhere (Story, Conflict of Laws, sec. 43); or, as Mr. Dicey puts it in his admirable book, 'the absence of any present intention of not residing permanently or indefinitely in' the new abode." Williamson v. Ostenton, 232 U. S. 619, 34 S. Ct. 442, 58 L. Ed. 761; Gilbert v. David, 235 U. S. 561, 35 S. Ct. 164, 59 L. Ed. 364.

"A domicile once acquired is presumed to continue until it is shown to have been changed." Warren Mitchell v. U. S., 88 U. S. (21 Wall.) 350, 353, 22 L. Ed. 584, 585; Ballard v. Puleston, 113 La. 235, 36 So. 951; Civ. Code, arts. 38, 41 and 43.

The defendant has failed to meet the burden that is upon her to show a change of domicile, and the lower court, in holding that her domicile at the time of the filing of the original suit was in Caddo parish, La., was correct.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be affirmed, with all costs, and that Miss Avonia Umbarger be substituted as party plaintiff.