F. GIACOMO FARA FORNI, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 37977. Filed July 28, 1954.

*Edward S. Bentley, Esq.*, for the petitioner.
*Charles M. Greenspan, Esq.*, for the respondent.

OPINION.

FISHER, *Judge:* Petitioner was born in 1864 in Pettenasco, Novara, Italy, and he has at all times been a citizen of Italy. He entered the diplomatic service of that country and served at numerous posts throughout the world until his complete retirement in 1927. At all times he owned a house in Milan, Italy, and a country seat in the place of his birth.

He married an American, and, after his retirement from the diplomatic service, he lived with her in Italy, France, and Switzerland. Most of their moves were necessitated by the condition of his wife's health. In 1938, she died in Lugano, Switzerland. After bringing her remains to this country for burial, petitioner returned to Lugano, where he lived until 1946. Lugano is in the southern part of Switzerland near the Italian border and about two hours away from Milan by train. Novara is near Milan in the northern part of Italy.

Under his wife's will, petitioner acquired certain securities and accounts which he permitted to remain in the possession or custody of the United States Trust Company of New York. During World War II, the transfer of funds to petitioner was restricted by Executive Order and his property was blocked. As a resident of Switzerland, petitioner was entitled to receive $100 per month under a general license granted by the Treasury Department. He was unable, however, to convert American money into Swiss currency and such sums were not sent to him by the trust company.

When the war in Europe ended, petitioner went to Paris and then to Monte Carlo, Principality of Monaco, where he regularly received $1,000 per month for his living expenses from the trust company. These payments were the maximum permitted out of blocked accounts under the pertinent general license. In 1947 petitioner returned to live in Lugano after he was advised that he would be able to receive his remittances there and convert them into Swiss currency.

Petitioner desired greatly to return to live in Italy near his relatives. His brother lived in Milan; his two sisters lived in Pettenasco; and his daughter and three grandchildren lived in Rome. Although he frequently traveled into Italy for visits and for business reasons, on the advice of his New York attorneys, petitioner did not return to Italy to live permanently. The attorneys feared that the property would be seized by the United States Government if he became an Italian resident before a treaty of peace with Italy was consummated.

During this period, petitioner was also influenced greatly by his desire to protect his American property from seizure by a European government which would compensate him in local money at a low rate of exchange. Accordingly, he corresponded with his attorneys concerning the possibility of transferring the property irrevocably in trust in order to eliminate this danger. It was necessary, however, that his American property be unblocked before such a trust could be created.

Petitioner was reluctant to apply for the release of his funds through the Swiss Government because a disclosure of this property would subject him to heavy taxes and penalties for having failed to "de-

nounce" his American property during the war. He was afraid to apply through the Italian Government because of the possibility that the funds would be seized by that country pursuant to the terms of a pending treaty of peace with the United States. Petitioner considered applying through the French Government but discovered that action by that Government would be delayed considerably.

In early 1948, petitioner was advised by his New York attorneys that, unless he was able to obtain the release of his funds by the following June 1, the Alien Property Custodian would investigate his account and report its contents to the Swiss Government. They subsequently advised him that, if he came to the United States and stayed long enough to convince the Treasury Department that he was a permanent resident of this country, his account would be unblocked, and that he could then execute the desired irrevocable trust.

Thereafter, petitioner arrived in New York on April 27, 1948. Three days later his application for a license to unblock his account was filed with the Treasury Department. On September 14, 1948, the license was granted, and on September 21, 1948, petitioner executed the trust agreement which irrevocably transferred certain assets to the United States Trust Company as trustee. On October 2, 1948, petitioner sailed for Europe on the *Queen Mary* and has not returned to this country.

The issue in this proceeding is whether petitioner was a resident of the United States at the time of the transfer to the trust company and thus entitled to take a specific exemption of $30,000 in his gift tax return as provided in section 1004 (a) (1) of the Internal Revenue Code.

The term "resident" has different meanings in different settings and under differing statutes. With respect to the issue before us, the word is construed by Regulations 108, section 86.4, which reads, in part, as follows:

A *resident* is one who has his *domicile* in the United States * * * at the time of the gift. * * * All others are nonresidents. A person acquires a domicile in a place by living there for even a brief period of time with no definite present intention of moving therefrom. *Residence without the requisite intention to remain indefinitely will not suffice to constitute domicile,* nor will intention to change domicile effect such change unless accompanied by an actual removal. [Emphasis supplied.]

Counsel for both parties agree that, for the purpose of this case, "residence" and "domicile" are synonymous. The problem thus resolves itself into the question of whether petitioner was domiciled in the United States on September 21, 1948, when the trust agreement was executed.

In *Mitchell* v. *United States*, 21 Wall. 350, the Supreme Court said, at page 353:

A domicile once acquired is presumed to continue until it is shown to have been changed. Where a change of domicile is alleged the burden of proving it rests upon the person making the allegation. To constitute the new domicile two things are indispensable: First, residence in the new locality; and, second, the intention to remain there. The change cannot be made except *facto et animo*. Both are alike necessary. Either without the other is insufficient. Mere absence from a fixed home, however long continued, cannot work the change. There must be the *animus* to change the prior domicile for another. Until the new one is acquired, the old one remains. These principles are axiomatic in the law upon the subject.

There is no dispute in the instant case concerning the first factor necessary to constitute a change of domicile, i. e., petitioner did reside in the United States between April 27 and October 2, 1948. The elements of the second factor, the intention to remain, were discussed further by the Supreme Court in *Williamson* v. *Osenton*, 232 U. S. 619 (1914). In that case, the Court, through Mr. Justice Holmes, said, at page 624:

The essential fact that raises a change of abode to a change of domicile is the absence of any intention to live elsewhere, Story on Conflict of Laws, § 43—or, as Mr. Dicey puts it in his admirable book, "the absence of any present intention of not residing permanently or indefinitely in" the new abode, Conflict of Laws, 2d ed. 111.

In the instant case, we hold that petitioner has not established the requisite intention to remain in the United States indefinitely (or permanently) which is a necessary element in the chain of proof if he is to show that he was domiciled in this country. In this connection, we point out the following:

(1) Petitioner owned two houses in northern Italy, one in Milan and the other in Pettenasco. In New York he lived in a transient hotel.

(2) Petitioner's close relatives were living in Italy. In New York, he had no relatives although he did have friends in that city.

(3) After the war, petitioner expressed his great desire to return to his "home" and family in Italy and to end his long "exile." He remained abroad near northern Italy, however, on the advice of his attorneys, in order to avoid the possible seizure of his American property and to receive remittances from the United States for his living expenses. When these reasons for living outside of Italy were eliminated in 1948, petitioner promptly returned to Europe. He thereafter lived part of each year in Milan, Italy, and part in nearby Lugano, Switzerland.

(4) Petitioner's only motive in coming to the United States was to obtain a license to unblock his property and to create a trust which would eliminate the danger of its seizure by a European government. He was willing to remain here long enough to accomplish these purposes. He knew from correspondence and discussions with his attorneys that the period necessary for the accomplishment of his objectives

was relatively limited. He had no intention of living in this country permanently. While he testified that he intended to reside in the United States "indefinitely," it appears from his testimony that he was using the word loosely, indicating merely that he did not know precisely how long it would take to get his property unblocked, or to create the contemplated trust.

(5) Petitioner entered this country on a nonimmigrant visa as a visitor under section 3 (2) of the Immigration Act of 1924, as amended. (8 U. S. C. sec. 203 (2) (1946 ed.)). There is evidence that petitioner inquired about obtaining an immigration visa on February 5, 1948, pursuant to the advice of his attorneys, but that he did not apply for one when he was informed that it would take about 2 months.

(6) Petitioner was authorized to remain in the United States until October 25, 1948. The pertinent immigration regulation then in effect (8 C. F. R. sec. 119.12 (1949 ed.)) provided, with respect to extension of stay, that an application must be filed approximately 30 days before the expiration of the period of admission. There is no evidence that petitioner contemplated extending the period of his stay beyond the 6 months which was granted to him when he entered the country. The contemplation of such an application became unnecessary, in fact, because petitioner had completed his business on September 21, and left the country on October 2, 1948. It is to be noted that the license unblocking his account was issued on September 14, 1948, 14 days before it would have been necessary for him to have applied for an extension of his stay.

(7) With respect to his intentions, petitioner deposed as follows:

Yes, I intended to stay there [in the United States] for an indefinite time, as I had sold everything I had in Europe, except in Italy, *but I did not plan to become a permanent resident.* [Emphasis supplied.]

The foregoing facts, and the record as a whole, present convincing reasons for us to conclude affirmatively that petitioner at all times while in this country had, in the words of the regulation, *supra*, "a definite present intention of moving therefrom" when his financial affairs had been settled. His stay in the United States may be termed of indefinite duration only in the sense that the exact date of his return to Europe could not be forecast precisely. It was abundantly clear to him that the period required to straighten out his affairs would be limited and relatively brief. It is not necessary, however, for us to make an affirmative finding to that effect in this case. Respondent determined that petitioner was not a resident of the United States in 1948 within the meaning of section 1004 (a) (1) of the Code, and his determination is presumptively correct. Upon the whole record, we think it is clear that petitioner has failed to overcome this presumption. We add, however, that if it were necessary to make an affirmative finding, we would concur in respondent's determination.

We hold, therefore, that petitioner has failed to establish that he was domiciled in the United States in 1948, and, as a consequence, may not be deemed to have been a United States resident in 1948 within the meaning of section 1004 (a) (1) of the Internal Revenue Code.

*Decision will be entered for the respondent.*