Stanley P. CIELICKI, Jr., Plaintiff,

v.

The PRESBYTERIAN–UNIVERSITY HOSPITAL, a Non-Profit Pennsylvania Corporation, Defendant.

Civ. A. No. 74-15.

United States District Court,
W. D. Pennsylvania.

Oct. 25, 1974.

M. Bruce McCullough, Pittsburgh, Pa., for plaintiff.

David H. Trushel, Allen T. Lane, Pittsburgh, Pa., for defendant.

## OPINION AND ORDER

MARSH, Chief Judge.

This is an action by plaintiff, Stanley P. Cielicki, Jr., against the Presbyterian-University Hospital, a non-profit Pennsylvania corporation, for an alleged malpractice occurring on September 23, 1971, following an accident and injury to his wrist on the previous day.

The plaintiff has resided in Natrona Heights, Pennsylvania since April, 1974.

The complaint was filed on January 4, 1974, and alleges that plaintiff is a "resident of the Borough of Richmond, City and State of New York."

The matter is before us on the jurisdictional issue as to the citizenship of the plaintiff at the time the suit was brought. Plaintiff's citizenship was challenged by defendant in its answer to the amended complaint. A hearing was held on the issue on October 3, 1974. The evidence adduced by the plaintiff may be summarized as follows:

The plaintiff was born on June 11, 1944, in French Hospital, New York City, New York. His family lived in Manhattan until they moved to Staten Island, New York, when Stanley was 12 years old. At the age of 18, Stanley

moved away from his parents to Queens, New York. After he was married he moved to his wife's home in Pennsylvania. Later they moved to Staten Island from where he was drafted into the military service. Following plaintiff's induction, his wife moved to her parents' home at 1431 Sixth Street, Natrona Heights, Pennsylvania. Mr. Cielicki spent approximately 11½ months on active duty in the military from the beginning of 1968 to December, 1968. Upon release from active service, he and his wife took up residence at 190 Lafayette Avenue, Staten Island, New York. Prior to his military service and subsequent thereto, Mr. Cielicki was employed by N. Levy Trucking Company, 252 Jersey Street, Staten Island, New York.

In the early part of 1970, Mr. Cielicki and his wife moved to Pennsylvania to live with the parents of his wife at 1431 Sixth Street, Natrona Heights, Pennsylvania. He and his family lived at this address until December 15, 1971, when they moved into a rented house at R. D. #1, Latrobe, Pennsylvania. After his injury Mr. Cielicki continued to reside with his family in Pennsylvania until August, 1972, at which time he moved to New York and lived with his mother and stepfather at No. 4 Dellafield Place, Staten Island, New York. Marital difficulties as well as a decision to consult a Dr. Accetola in New York regarding the injury to his wrist were the reasons he left Pennsylvania in August, 1972. He had been out of work since the injury and although there was initially a question as to who should pay his Workmen's Compensation benefits, it was finally decided that Pennsylvania was responsible, although his employer was a Michigan trucking firm. Mr. Cielicki's Workmen's Compensation benefits from Pennsylvania became effective January 3, 1972 and he received payments until December, 1972. After he moved to New York in August, 1972, payment checks were forwarded to his New York address. He never received Workmen's Compensation checks from any state other than Pennsylvania.

When plaintiff moved to New York, he took all of his clothes with him. He called his wife at Latrobe and discovered the telephone was disconnected. He then called the home of his in-laws at Natrona Heights, Pennsylvania; his wife answered the telephone and he was informed that she had moved in with her parents and had placed the family's furniture in storage.

Plaintiff continued to correspond with his wife while in New York, both by letter and telephone. In December, 1972, he began to work for the Waterfront Trucking Company in New York, a concern owned by his uncle. He continued to work as a truck driver for Waterfront until February, 1974. He also continued to forward support payments to his wife although there was no legal separation between the parties. Plaintiff testified that subsequent to his departure to New York to visit Dr. Accetola, conversations and correspondence with his wife grew worse and she had indicated to him that she was going to file for divorce. Mrs. Cielicki testified to the fact that the couple was undergoing marital difficulties and further that she initiated divorce proceedings which were filed at the April Term, 1973, in the Court of Common Pleas of Allegheny County. She subsequently dropped the proceedings after approximately nine months. Mr. Cielicki testified that he was notified of a registered letter in September or October, 1972. He refused to accept or sign for this letter because he assumed the letter contained matters with respect to his wife's intention to secure a divorce. No evidence was introduced to show the contents of the letter.

Plaintiff returned to live with his wife and family in Natrona Heights, Pennsylvania in April, 1974.

On cross examination, plaintiff agreed that he was asked the following questions and made the following answers at his deposition taken on June 13, 1974:

"Q. Where do you live?

A: 1431 Sixth Street, Natrona Heights, Pennsylvania 15065.

Q: How long have you lived at that address?

A: I just got back here April, one month. On and off, though, about nine years.

Q: Is that your home?

A: It is my mother-in-law's.

Q: Your mother-in-law's?

A: Right.

Q: And where did you live prior to that?

A: Prior to the nine years?

Q: Yes.

A: Staten Island, New York.

Q: And the address there?

A: 190 Lafayette Avenue, Staten Island, 10301.

Q: And you said you just got back here in April. Had you been living someplace else?

A: Yes. In between I was living at No. 4 Dellafield Place, Staten Island, New York 10305. That's my mother's and father's place.

Q: Have you returned to make your residence in Pittsburgh or in Natrona Heights?

A: Actually, my residence is in Natrona Heights. I have been, you know, on and off with my in-laws there. I had gone back to New York to see my doctor. That prolonged my stay over there.

Q: Okay. But you consider your home to be Natrona Heights?

A: Yes.

\* \* \* \* \* \*

Q: When you went to New York, was it your intention to return to Pittsburgh some time and make your home with your wife?

A: Yes. See, the thing is I just went to him [the doctor] just for his opinion, if I needed another operation or not.

Q: You never intended to make your home permanently in New York when you went back there?

A: No. That wasn't my intention.

Q: Your intention was to come back at some time and make your home or resume your residence in Natrona Heights?

A: Yes.

We find that his original intent was to return to Pennsylvania, that he had always hoped his marital difficulties would be resolved and that his intent did not change when he was notified of the registered letter mentioned above. Although he testified that he felt there was no longer a possibility that he and his family would someday get together, and at this point formed the intent to permanently reside in New York, we find this testimony is inconsistent with his actions, i. e., continuous contact with his wife by letter and telephone and the sending of support money to her for herself and the children. He did not stop such contacts after refusing the registered letter. Nor did he indicate at the time of the taking of his deposition this change of intent upon knowlege of the registered letter. Actually his refusal to accept the registered letter which he assumed pertained to a divorce is persuasive that he did not want to be divorced but desired to effect a reconciliation and return to his family in Pennsylvania which later came to pass.

In determining the intent of the plaintiff it is necessary to look at all indicia of plaintiff's intent including his exercise of political rights, payment of taxes, membership in civic or business associations, etc. Krasnov v. Dinan, 465 F.2d 1298, 1301 (3rd Cir. 1972) citing Wright, Federal Courts § 26, at.87 (2nd Ed.1970) and Mitchell v. United States, 88 U.S. (21 Wall.) 350, 353, 22 L.Ed. 584 (1874). See also: Herzog v. Herzog, 333 F.Supp 477, 478 (W.D.Pa.1971).

Plaintiff never registered to vote either in Pennsylvania or New York. He maintained a New York chauffeur's license which was originally issued when he was eighteen and shows his address as 190 Lafayette Avenue, Staten Island, New York, which was his mother's ad-

dress nine years ago before he moved to Pennsylvania; this license was subsequently renewed every three years. He now also holds a Pennsylvania driver's license as required by his most recent employer, B & P Motor Freight. Plaintiff introduced three exhibits into evidence: (1) a premium statement from Allstate Insurance Company showing that he was issued insurance for his automobile at his New York address, 4 Dellafield Place, on May 7, 1973 with rates applicable to a New York resident; (2) receipts showing he paid dues to Teamsters Local No. 807 in Long Island City, New York for the period of January–November, 1973; and (3) a packet of blank checks issued in his name from the Central Home Trust Company of Elizabeth, New Jersey, Port Plaza Office. He has paid taxes in Pennsylvania, Michigan and New York during his residence in those states.

Plaintiff and his family acquired a domicile in Pennsylvania in 1970; in fact, they may have become Pennsylvania domiciliaries even earlier when they moved to Pennsylvania following their marriage. In order to acquire a new domicile of choice it is necessary that plaintiff exhibit physical presence in the new domicile as well as an intent to "indefinitely" remain there. Gallagher v. Philadelphia Transp. Co., 185 F.2d 543 (3rd Cir. 1950); Krasnov v. Dinan, *supra*. Furthermore, jurisdictional statutes, i. e., 28 U.S.C. § 1332 in this case, should be strictly construed and plaintiff has the burden to affirmatively establish citizenship in New York at the time he filed his complaint. Herzog v. Herzog, *supra*, 333 F.Supp. at 478, citing Ramsey v. Mellon National Bank, etc., 350 F.2d 874 (3rd Cir. 1965). Plaintiff must also overcome the presumption in favor of an original or former domicile as opposed to his allegedly newly acquired domicile in New York. Such a presumption can only be overcome by clear and convincing evidence. *Herzog, supra,* 333 F.Supp. at 478; Hamlin v. Holland, 256 F.Supp. 25 (E.D.Pa. 1966). In *Herzog,* plaintiff resided in

New York State for one and one-half years while in the case *sub judice* plaintiff argues residence in New York for 21 months. The court in *Herzog,* however, failed to find that plaintiff clearly and convincingly proved the intent to establish a new domicile. That court further negated the fact that plaintiff acquired a New York operator's license since non-residents in New York undertaking extensive stays are obliged by law to obtain licenses. A negation in the case *sub judice* is more convincing since plaintiff testified he maintained his New York license continuously from the time he was 18 even after his marriage when he became a domiciliary of Pennsylvania.

Furthermore, the payment of insurance in New York, the New Jersey checking account and the payment of union dues which was necessary to obtain New York employment, Local Union 807 being at that time the closest local to plaintiff's then present residence, are far from clear and convincing indicia of acquisition of a New York domicile This is especially true when these factors are weighed against plaintiff's intent. Here his intent was contingent upon solution of his marital difficulties, reconciliation with his wife and return to his family in Pennsylvania. Plaintiff has failed to show an intent to "indefinitely" remain in New York. On the contrary, it appears he had more than the vague notion to return to Pennsylvania argued by his counsel. He never established a residence of his own in New York, although he argues he was financially unable to do so, but more important he seems to have maintained a continual, almost compelling, intent to return to Pennsylvania as evidenced by his letters, telephone conversations, refusal to accept a registered letter assumed to be related to a divorce, and eventual reconciliation with his wife. Accordingly, we find plaintiff was a citizen of Pennsylvania at the time suit was brought and this court does not have jurisdiction since the requisite diversity under 28 U.S.C. § 1332 is lacking.

The above opinion shall be deemed to embody findings of fact and conclusions of law pursuant to Rule 52, Fed.R. Civ.P.

An appropriate order will be entered.