**AUDI PERFORMANCE & RACING, LLC, an Alabama Limited Liability Company, and Stephen Hooks, an individual, Plaintiffs,**

v.

**Nicholas P. KASBERGER, an individual, Revo Technik, America, LLC, a Florida Limited Liability Company, and Todd T. Williams, an individual, Defendants.**

**Civil Action No. 03–F–396–E.**

United States District Court, M.D. Alabama, Eastern Division.

July 3, 2003.

---

Raymond L. Jackson, Jr., Lisa E. Boone, Jackson & Boone, PC, Auburn, AL, for plaintiffs.

Rebecca W.P. Buxton, Akridge & Balch, P.C., James D. McLaughlin, Davis & McLaughlin, Auburn, AL, for defendants.

## *MEMORANDUM OPINION*

FULLER, District Judge.

## I. INTRODUCTION

This cause is before the court on the Plaintiffs' Motion to Remand (Doc. # 7), filed on May 9, 2003. Plaintiffs originally filed this action against the Defendants on March 11, 2003, in the Circuit Court of Lee County, Alabama. Plaintiffs seek injunctive relief and damages for claims of: breach of contract, trade libel, defamation, breach of the Alabama trade secrets act, tortious interference with business relations, conversion, and civil conspiracy. All claims arise under Alabama common or statutory law.

On April 10, 2003, Defendants timely removed the case to this Court pursuant to 28 U.S.C. § 1441 asserting federal subject matter jurisdiction under 28 U.S.C. § 1332(a)(1). Plaintiffs subsequently filed the instant motion in which they challenge Defendants' assertion that complete diversity of citizenship exists between the parties. Plaintiffs' Motion to Remand came under submission on May 30, 2003.

That this case satisfies Section 1332(a)(1)'s requirement that the amount in controversy exceed $75,000 is not in dispute. The sole issue for resolution by this Court is whether Section 1332(a)(1)'s

requirement that there be complete diversity of citizenship is satisfied. It is undisputed that Plaintiffs are citizens of Alabama and that two of the Defendants (Revo Technik America, LLC and Todd T. Williams) are citizens of Florida for diversity purposes. Plaintiffs contend that the remaining defendant, Nicholas Kasberger (hereinafter "Kasberger") is a citizen of Alabama whose presence as a defendant in this lawsuit defeats the complete diversity required for this Court to have subject matter jurisdiction pursuant to Section 1332(a)(1). Defendants assert that Kasberger, a former Alabama resident, was at all times relevant to the inquiry before this Court, a citizen of Florida for the purposes of diversity jurisdiction. Thus, the question before this Court is: whether Defendants have satisfied their burden of establishing that Kasberger was a citizen of Florida, rather than Alabama, within the meaning of 28 U.S.C. § 1332(a)(1) at the relevant time for determining the existence of diversity jurisdiction over this lawsuit. After a careful review of the parties' submissions and the applicable law, the Court concludes that Defendants have failed to meet their burden, and the Plaintiffs' Motion to Remand (Doc. 7) is due to be GRANTED.

## II. FACTS

From January of 1999 until January of 2003, Kasberger worked for Plaintiff Audi Performance & Racing (hereinafter "APR") in Alabama. On January 10, 2003, APR notified Kasberger that he was being laid off effective immediately. On February 1, 2003, Kasberger commenced an employment relationship with Revo Technik, Ltd., a foreign company. It is Kasberger's testimony that it was agreed between him and Revo Technik, Ltd. that he would work in Florida. It was not until April 1, 2003, that Kasberger began working in the position he currently holds for a subsidiary of Revo Technik, Ltd., called Revo Technik America, LLC.

On February 18, 2003, Kasberger moved some of his personal possessions and his clothing to Sarasota, Florida. When he arrived in Florida, he moved in with his parents at 7202 Bounty Drive. During the time he lived with them, he did not pay rent or utilities, but he occasionally purchased groceries. In order to finish up some work for her employer,[1] Kasberger's wife remained in Alabama. Until March 15, 2003,[2] the couples' furniture and household goods remained in Alabama in the apartment the Kasbergers had shared prior to February 18, 2003. Between February 18, 2003 and March 15, 2003, Kasberger returned to Alabama to stay with his wife at least two or three times and stayed from two to three days. On at least one occasion during this period, he stayed four days. Thus, in this twenty-five day period, Kasberger admits that he may have been living in his Alabama apartment with his wife, his furniture and household belongings for as many as ten days.

On March 12, 2003, Kasberger's wife was served with a Summons and Complaint for this lawsuit which had been filed on March 11, 2003. At the time the lawsuit was filed, Kasberger had opened bank accounts in Florida. He had not signed a lease for a new residence, but rather he was staying at his parents' home rent free. Nevertheless, he has testified that as of February 18, 2003, he believed he was a

---

1. On January 13, 2003, Kasberger's wife notified her employer that she would be resigning, but she agreed to continuing working through "tax season." Her last day of employment was March 14, 2003. She moved to Florida on March 15, 2003.

2. The lease for this apartment extended to August of 2003. Kasberger does not know the effective date of the termination of the lease.

citizen of Florida and he had an intention to remain there.

Despite this representation to the Court, on March 4, 2003, Kasberger testified before a Hearing Officer at an unemployment compensation hearing in Alabama that he resided in Alabama (at the address which he had occupied with his wife). He also represented to this Court that he was paying taxes in Florida.[3]

According to the web site for the State of Florida Department of Revenue, Florida does not impose personal income, inheritance, or gift taxes. The State of Florida does impose intangible tax, ad valorem taxes, and sales taxes, but Kasberger has not explained how the payment of such taxes would be relevant. It is possible that Kasberger intended to show that by listing his parents' Florida address on his 2002 federal income tax return he had advised the Internal Revenue Service of his intention to become a Florida resident. He has submitted what appear to be unsigned copies of his federal income tax return for 2002. Without any testimony as to when his tax return was prepared and when it was filed, the unsigned copies of his federal return for 2002 do not establish anything relevant to the inquiry before the Court. Nowhere in his Affidavit does Kasberger verify that this is a copy of the form he filed with the Internal Revenue Service or the date on which he filed his 2002 federal income taxes. Moreover, the address listed on the form for both Kasberger and his wife is Kasberger's parents' home in Florida, not the Florida apartment into which Kasberger and his wife eventually moved. Indeed, unless this form was prepared after March 15, 2003, which would make it irrelevant to the issue of Kasberger's residence on March 11, 2003, it incorrectly shows Kasberger's wife as residing in Florida when she was still physically located in Alabama and had not even visited Florida. Consequently, the form is of little assistance to any issue before the Court.

At the end of March, Kasberger and his wife signed the lease on the apartment in which he now resides with his wife in Florida.

At the time this lawsuit was filed, Kasberger's automobile was registered by and licensed in Alabama. At the time this case was removed to federal court, Kasberger's vehicle continued to be licensed and registered in Alabama, and he had taken no steps to change the license and registration to Florida. Similarly, at the time this lawsuit was filed and when it was removed, Kasberger's driver's license was issued by the State of Alabama, and he had taken no steps to obtain a Florida driver's license. Kasberger was and continues to be registered to vote in Alabama, and he has taken no steps to register to vote in Florida or to be taken off of the voter registration rolls in Alabama. Kasberger continued to use his cell phone with an Alabama telephone number after relocating to Florida and by the time of the filing of this lawsuit he had not applied for a Florida residential telephone number. When Kasberger "moved" to Florida on February 18, 2003, Kasberger did not file a change of address with the United States Postal Service seeking to reroute his mail delivery to Florida and he admits that bills for the utilities on the Alabama apartment may have continued to be mailed to that address after he left for Florida. There is no evidence before this Court with respect to church or club memberships which would bear on the issue of Kasberger's domicile as of March 11, 2003.

### III. DISCUSSION

 As an initial matter, the Court notes that federal courts are courts of

---

**3.** It is not clear from Kasberger's Affidavit what he means when he states that he was "responsible for paying taxes in the State of Florida."

limited jurisdiction. *See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir.1994). As such, they may only hear cases that they have been authorized to hear by the Constitution or the Congress of the United States. *See Kokkonen*, 511 U.S. at 377, 114 S.Ct. 1673. Consequently, remand of removed cases is favored where federal jurisdiction is not absolutely clear. *See, e.g., Burns*, 31 F.3d at 1095; *Rayfield v. Nat'l Auction Group, Inc.*, 878 F.Supp. 203, 206 (M.D.Ala.1995) ("Because the removal statutes are strictly construed against removal, generally speaking, all doubts about removal must be resolved in favor of remand.") As the proponents of removal, Defendants have "the burden of proving the existence of federal jurisdiction." *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir.1996). *Accord, McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) ("[T]he party invoking the court's jurisdiction bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction."); *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir.1996), *cert. denied*, 520 U.S. 1162, 117 S.Ct. 1349, 137 L.Ed.2d 506 (1997) (stating that the party seeking removal to federal court has the burden of establishing federal jurisdiction).

Removal of a case from state to federal court is proper if the case could have been brought originally in federal court. *See* 28 U.S.C. § 1441(a). *Accord, Tapscott*, 77 F.3d at 1356 ("Any civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court.") (citations omitted). Defendants argue that removal was proper because the Court has jurisdiction over this case due to diversity of citizenship.

█ The diversity statute confers jurisdiction on the federal courts in civil actions between citizens of different states, in which the jurisdictional amount of greater than $75,000, exclusive of interest and costs, is met. *See* 28 U.S.C. § 1332(a)(1). According to the rule of "complete diversity," no plaintiff may share the same state citizenship with any defendant. *See Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d 1334, 1337 (11th Cir.2002). Indeed, one of the Supreme Court's earliest cases, *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806),[4] held that there is no diversity jurisdiction when any party on one side of the suit is a citizen of the same state as any party on the other side.

█ When a court is reviewing the citizenship of the parties to determine if the suit meets the requirements of diversity jurisdiction, the court must look to the citizenship of the parties at the time the action was filed and at the time of removal. *See, e.g., Stevens v. Nichols*, 130 U.S. 230, 231, 9 S.Ct. 518, 32 L.Ed. 914 (1889); *Roecker v. U.S.*, 379 F.2d 400, 407 (5th Cir.), *cert. denied*, 389 U.S. 1005, 88 S.Ct. 563, 19 L.Ed.2d 600 (1967)[5]; *Brown v. TranSouth Finan. Corp.*, 897 F.Supp. 1398, 1402 (M.D.Ala.1995); *Goff v. Michelin Tire Corp.*, 837 F.Supp. 1143, 1144 (M.D.Ala.1993).[6]

---

**4.** Overruled on other grounds by 43 U.S. (2 How.) 497, 11 L.Ed. 353 (1844).

**5.** In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down

prior to the close of business on September 30, 1981.

**6.** *See also* cases cited and commentary in Wright, Miller & Cooper, **Federal Practice & Procedure:** Jurisdiction 3d § 3723, p. 574 ("The purpose of requiring diversity to exist at

██ For purposes of diversity jurisdiction, "citizenship" means "domicile." *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir.1954). In fact, it is a party's domicile rather than his residence which is determinative of citizenship for diversity jurisdiction. *Jagiella v. Jagiella*, 647 F.2d 561, 563 (5th Cir.1981); *Combee v. Shell Oil Co.*, 615 F.2d 698, 700 (5th Cir.1980); *Rayfield*, 878 F.Supp. at p. 207. "A person's domicile is the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom...." *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir.) *cert. denied*, 419 U.S. 842, 95 S.Ct. 74, 42 L.Ed.2d 70 (1974) (internal quotations omitted); *Spann v. Northwestern Mut. Life Ins. Co.*, 795 F.Supp. 386, 390 (M.D.Ala.1992).

██ Courts have acknowledged the usefulness of certain presumptions with respect to a person's domicile. *See Mitchell v. United States*, 88 U.S. (21 Wall.) 350, 352, 22 L.Ed. 584 (1874) (listing useful presumptions); *McDonald v. Equitable Life Ins. Co. of Iowa*, 13 F.Supp.2d 1279, 1281 (M.D.Ala.1998) ("In determining domicile, a court should consider both positive evidence and presumptions."). First among these presumptions is "that the state in which a person resides at any given time is also that person's domicile." *McDonald*, 13 F.Supp.2d at 1281 (citing *District of Columbia v. Murphy*, 314 U.S. 441, 455, 62 S.Ct. 303, 86 L.Ed. 329 (1941), and *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir.1954)). Second, "once an individual has established a domicile, he remains a citizen there until he satisfies the mental and physical requirements of domicile in a new state." *McDonald*, 13 F.Supp.2d at 1281 (citing *McDougald v. Jenson*, 786 F.2d 1465, 1483 (11th Cir.1986)). Another important presumption is that of

> favoring an established domicile as against an allegedly newly acquired one. The effect of this presumption is to put a heavier burden on a party who is trying to show a change of domicile than is placed on one who is trying to show the retention of an existing or former one.

*Brown*, 897 F.Supp. at 1402 (internal quotations omitted).

██ Once a person establishes a domicile, it *continues* until the person establishes a *new* domicile. *Id.* (emphasis added). In this circuit, it is elementary that, to effect a change of one's legal domicile, *two* things are indispensable: First, *residence in the new locality;* and second, the *intention to remain there.* The change cannot be made, except facto et animo. Both are alike necessary. Either without the other is insufficient. *Welsh v. Am. Sur. Co. of New York*, 186 F.2d 16, 17 (5th Cir.1951) (emphasis added). *Accord, McCormick*, 293 F.3d at 1258 (quoting *Mas*, 489 F.2d at 1399).

██ Courts examine numerous specific objective facts to determine whether a domicile has been established; these facts include:

> location of employment; home ownership and ownership of other real property; location of one's household furnishings; registration and title to one's automobiles; driver's licensing; voter registration; payment for utilities; banking; acquiring a telephone number and listing it; receiving mail; and establishing membership in local professional, civic, religious, or social organizations.

both times apparently is to prevent a nondiverse defendant from acquiring a new domicile after the commencement of the state suit and then removing on the basis of newly created diversity of citizenship.")

*Rayfield,* 878 F.Supp. at 206 (citing *Simmons v. Skyway of Ocala,* 592 F.Supp. 356, 359 (S.D.Ga.1984)). However, no single factor is conclusive; instead, a "totality of evidence" approach is necessary. *McDonald,* 13 F.Supp.2d at 1281; *Nat'l Artists Mgmt. Co. v. Weaving,* 769 F.Supp. 1224, 1228 (S.D.N.Y.1991).

■ Kasberger would have this Court accept his sworn representation that he established a residence in Florida and that as of February 18, 2003, that residence was the place to which he intended to return. An individual's statements of intent are also considered in determining domicile. *McDonald,* 13 F.Supp.2d at 1281. A party seeking to establish that he has changed his domicile may submit declarations of his intention to establish a domicile in a particular state, however like other self-serving declarations, such statements may lack persuasiveness or be negated by other declarations or inconsistent acts. *Welsh,* 186 F.2d at 18; *McDonald,* 13 F.Supp.2d at 1281 ("when subjective expressions of intent conflict with established facts, courts accord them little weight."); *Rayfield,* 878 F.Supp. at 206. Kasberger's subjective expressions of intent do conflict with established facts and with the declaration he made at the March 4, 2003 unemployment compensation hearing. Consequently, these self-serving declarations lack persuasiveness.

While Plaintiffs claim that *Hendry v. Masonite Corp.,* 455 F.2d 955 (5th Cir. 1972) requires remand of this case, the Court finds that *Hendry* alone is an insufficient basis for remand because it is distinguishable from the instant case in many key respects.[7]

The suggestion made by counsel for Kasberger that the Court disregard it because it is an old case displays a fundamental lack of understanding of *stare decisis.* First, part of the ruling in *Hendry* was premised on the fact that the defendant had voted as a Mississippi resident twice after the date on which he claimed to have become an Illinois domiciliary. Second, the defendant in *Hendry* owned property in Mississippi after he claimed to have changed his domicile. It is true that in all other respects similar to the one at hand; however, the Court finds that *Hendry* alone does not compel remand because there is no evidence that Kasberger owned property or voted in Alabama after the filing of this lawsuit. Consequently, the Court must now examine the *Rayfield* factors.

■ Kasberger has not presented any evidence that he owned[8] or rented a residence in Florida prior the end of March of 2003 when he leased the apartment in which he currently presides. Prior to that date, he stayed with his parents in their Florida home and his wife at their apartment in Alabama. The Alabama apartment was not vacated until March 15, 2003, several days after this lawsuit was filed. Kasberger's merely living with someone in Florida part time and saying that he intended that to be his home after he learned that he had been sued in Alabama hardly outweighs the evidence to the contrary. *See Rayfield,* 878 F.Supp. at 207.

While Kasberger had obtained employment prior to the initiation of this lawsuit, his own testimony reveals that he began that employment before his February 18, 2003 move to Florida. Thus, the Court cannot find that the fact of the employment alone required his presence in Florida. Nevertheless, Kasberger did move his

---

7. Nothing in this statement should be taken as a rejection of the *Hendry* case. Despite its age, it continues to operate as *binding precedent* on this Court.

8. From the record, it would not appear that Kasberger owns a home or any other real property in either Florida or Alabama.

clothing and personal belongings to Florida prior to being sued. Additionally, he had opened bank accounts in Florida and his wife had announced that they were planning a move to Florida.

Kasberger's spouse and their household furnishings remained in their Alabama apartment until after the date this suit was filed. Kasberger did not become responsible for any utility payments in Florida prior to the filing of this lawsuit. Kasberger's driver's license, vehicle registration and license plate all were issued by the State of Alabama and long after this lawsuit was filed and Kasberger "moved" to Florida, and Kasberger did nothing to change this prior to the date on which this suit was filed. Similarly, as of the date of the initiation of this action, Kasberger was a registered voter in Alabama, and he had done nothing to rescind that registration or to register to vote in Florida. As of the date of the filing of this lawsuit, Kasberger had not acquired a Florida telephone number, but instead was continuing to use his cell phone which had an Alabama number. Kasberger had not established membership in any local professional, civic, religious or social organizations in Florida by the date on which he was sued.

The Court finds that the totality of the relevant evidence before it indicates that Kasberger was, for purposes of diversity jurisdiction, a domiciliary of Alabama on March 11, 2003, when Plaintiffs filed this lawsuit, and that as of that date he had not changed his domicile to Florida. Given these findings and the requirement that diversity exist at the time that the lawsuit sought to be removed was filed, the Court need not explore whether Kasberger successfully changed his domicile at some later date. Thus, the Court finds that Kasberger has not met his burden of establishing that the requirements for diversity jurisdiction are satisfied. Consequently, this case is due to be remanded to the Circuit Court of Lee County, Alabama.

## IV. CONCLUSION

The Court concludes that Kasberger was domiciled in Alabama on the date that this lawsuit was filed and was a citizen of Alabama for diversity purposes within the meaning of 28 U.S.C. § 1332(a)(1). Accordingly, the complete diversity requirement in § 1332(a)(1) is not met, as each defendant is not diverse from each plaintiff. Plaintiffs' Motion to Remand (Doc. # 7) is due to be GRANTED and the case shall be remanded to the Circuit Court of Lee County, Alabama.

A separate Order will be entered in accordance with this Memorandum Opinion.

## *ORDER*

In accordance with the Memorandum Opinion entered in on this day, it is hereby ORDERED as follows:

1. Plaintiffs' Motion to Remand (Doc. # 7) is GRANTED.

2. This case is REMANDED to the Circuit Court of Lee County, Alabama.

3. The Clerk is DIRECTED to take appropriate steps to effect the remand.

4. Any pending motions are left for resolution by the Circuit Court of Lee County, Alabama.