Jimmy L. WASSON

v.

**NORTHRUP WORLDWIDE AIRCRAFT
SERVICES, INC.**

No. SA–76–CA–305.

United States District Court,
W. D. Texas,
San Antonio.

Jan. 17, 1978.

J. Anthony Guajuardo, San Antonio,
Tex., for plaintiff.

Clayborne B. Gregory, Jr., San Antonio,
Tex., for defendant.

MEMORANDUM ORDER

SUTTLE, District Judge.

Although federal courts have been vested with original jurisdiction over diversity actions since the passage of the First Judiciary Act,[1] not even the most learned commentators have been able to state with complete certainty why such jurisdiction was initially created or why it is any longer necessary.[2] Indeed, even the reason most commonly cited to justify diversity jurisdiction—the need to insure a "neutral" forum for resolving disputes between citizens of different states—loses much of its force as our society grows ever more mobile. This is especially true when the narrow rules that have come to govern the determination of diversity are applied in cases such as this where at least one of the parties has spent much of his adult life traveling from one job and one "residence" to another. If the history of this suit shows anything, it stands as a testament to Justice Frankfurter's declaration that diversity jurisdiction "is inherently . . . not founded in reason." *Lumbermen's Casualty Co. v. Elbert,* 348 U.S. 48, 56, 75 S.Ct. 151, 1156, 99 L.Ed. 59 (1954) (concurring opinion).

1. Act of Sept. 24, 1789, 1 Stat. 73. The diversity provision in the present code is found in 28 U.S.C. § 1332.

2. *See* generally 13 Wright, Miller & Cooper, *Federal Practice and Procedure*: Jurisdiction § 3601.

3. The following "statement of the case" appears in the briefs of both parties:

"Plaintiff was hired as an 'egress system' specialist in the former Republic of South Viet Nam to assist in Defendant's operations in that country being carried out pursuant to a contract with the United States Air Force. This employment agreement was entered into on January 1, 1975, and was to continue through December 31, 1975, unless sooner terminated in accordance with certain provisions thereof. Plaintiff indicated on the employment agreement that his permanent home of record was 411 E. 8th Street, Bristow, Oklahoma.

"During April, 1975, Defendant's contract with the United States Air Force was cancelled due to the imminent invasion of South Viet Nam by the North Vietnamese Army. As a result of such invasion, Plaintiff's employment was terminated by Defendant in accordance with the terms of the employment agreement.

## I.

The Plaintiff brought this suit to recover damages stemming from an alleged breach of contract.[3] As grounds for invoking diversity jurisdiction the Plaintiff alleged that he was a citizen of Texas and that the Defendant corporation was a citizen of Oklahoma. The Defendant responded by moving that the suit be dismissed for lack of jurisdiction over the subject matter, alleging that the Plaintiff was, in fact, a citizen of Oklahoma.[4]

■ Whenever a jurisdictional issue has been raised, the burden of proof rests on the party alleging jurisdiction. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). Nevertheless, the Plaintiff let eleven months pass without furnishing the court any affidavits detailing the factual basis for his assertion. Finally, on October 31, 1977, this court issued an "Order Setting Schedule" in which the Plaintiff was given until November 11, 1977, to file any affidavits or briefs in support of jurisdiction; the Defendant was required to file any response

"Plaintiff has alleged that he was *unable to make his way back to the United States until October 19, 1975, due to a 'lack of funds' and 'unavailability of flights' and has demanded payment for wages and salary for the period beginning at the time Plaintiff's employment was terminated until October 19, 1975. Additionally, Plaintiff has demanded payment for the loss of certain personal property which he left behind on his exit from South Viet Nam."*

4. The Defendant also moved for a change of venue to the Western District of Oklahoma on alternate grounds. First, the contract contained a forum-saving clause that stated that any lawsuits arising from the contract would be brought in Comanche County, Oklahoma; and, second, that a change of venue was necessary for convenience to the parties under 28 U.S.C. § 1404(a). Because the court finds that the case must be dismissed for want of jurisdiction, the court need not—and does not—reach either venue question. Thus it remains for the Texas state courts—should the Plaintiff choose to pursue his action there—to determine the value that should be placed upon the forum-saving clause.

by November 18, 1977. The order further stated the court was "confident [it could] reach a decision on the basis of the affidavits submitted by the parties" and a decision was promised by December 7, 1977. Unfortunately, the affidavit subsequently submitted by the Plaintiff appeared to be totally unresponsive to the requirements outlined in the October 31 order. The Plaintiff simply declared that he "abandoned [his] residence and domicile in Oklahoma, with no intention of returning there, on June 26, 1976," when he was married in San Antonio, Texas. There was no mention of any objective factors showing a change in citizenship such as driver's license, voter's registration, ownership of property, and so forth. The affidavit submitted by the Defendant, however, indicated that the reason the Plaintiff omitted these factors was because he had done nothing, apart from getting married, that would in any way give the slightest indication of an intent to remain in Texas.[5] In fact, the only thing the Plaintiff had done that might show any permanent ties with a particular state was to maintain a current *Oklahoma* driver's license during his entire stay in Texas. Quite clearly it became impossible for the court to achieve its goal of reaching a decision on the basis of the affidavits and still do justice to the parties. For the affidavits failed to reveal why the Plaintiff would claim Texas citizenship solely on the basis of marriage when he failed to follow that marriage with a single step—not even replacing his out-of-state driver's license with a Texas one despite a state law requiring all new residents to do so[6]—that would indicate the slightest intent to settle here. Thus the court believed an evidentiary hearing on the diversity issue was necessary.

The hearing was held on January 5, 1978. The Plaintiff was the only witness. After hearing the evidence and the arguments of counsel, this court dismissed the suit on the grounds that it lacked jurisdiction over the subject matter, there being no diversity of citizenship between the parties. The purpose of this order is to set forth the findings of fact and the conclusions of law upon which the court based its decision. If there is any inconsistency between this order and the prior oral ruling, this order shall control.

## II. Findings of Fact

The Plaintiff was born in Cleveland, Oklahoma, on September 18, 1931. When the Plaintiff was five his family moved to Bristow, Oklahoma, where his family still resides. Since completing high school in Bristow, the Plaintiff has spent his adult life continually moving from one job and one location to another; included among the various places where the Plaintiff has lived and worked are Wichita, Houston, Brownsville, Oakland, and Wake Island. On January 1, 1951, the Plaintiff was married for the first time. The marriage was performed in Oklahoma. This marriage ended in divorce in 1967 and the Plaintiff's ex-wife still resides in Sapulpa, Oklahoma, along with three of their four children. During much of this marriage the Plaintiff continued to work in various jobs throughout the country; it is unclear whether his wife and family accompanied him to his new locations often, or at all.

The Plaintiff married for a second time in November, 1969, while he was in the Philippines. This marriage also ended in divorce in February, 1976. Although the evidence is also unclear on this point, it appears that while the Plaintiff continued to travel, his second wife remained in Sacramento, California, with their only child; this second family still lives in Sacramento. Some of the locations in which the Plaintiff lived during the course of this marriage include Sacramento, Fort Worth, Oklahoma City, and South Viet Nam. Again, the evi-

---

5. It was shown, for example, that the Plaintiff did not have a current Texas driver's license, was not registered to vote in Texas, did not appear on the current city tax roles, was not listed among current UCC filings, did not own property in Texas, and so on.

6. *See* Tex.Rev.Civ.Stat.Ann. art. 6687b(3A) (1977)

dence is unclear whether his second family accompanied him often, or at all.[7]

On November 8, 1973, the Plaintiff entered into an employment agreement with the Defendant. This contract was executed in Lawton, Oklahoma, and provided that the Plaintiff would be working for the Defendant in South Viet Nam. On the contract the Plaintiff listed his permanent address as 411 E. 8th St., Bristow, Oklahoma, which was his parents' residence. The Plaintiff also gave that address as the place for his remains to be shipped in the event that he became another casualty of the Viet Nam war. Two facts stand out about this address: first, the Plaintiff gave it in spite of the fact that his wife and child were living in Sacramento; and, second, this was the address that the Plaintiff *always* gave as his permanent address no matter where he was working at the time.

The Plaintiff left for Viet Nam in December, 1973. When he departed, he possessed an Oklahoma driver's license; the license was obtained when the Plaintiff was in his teens and, despite his travels, it was renewed in Oklahoma time and time again.

While the Plaintiff was in South Viet Nam he entered into a second employment agreement with the Defendant on January 1, 1975. This contract also lists the Plaintiff's permanent address as 411 E. 8th St., Bristow, Oklahoma, and that address is again designated as the location to which the Plaintiff's remains should be shipped in the event of his death. At the time he executed this contract, the Plaintiff was still married to his second wife; she still resided in Sacramento, California.

In April, 1975, the Plaintiff was forced to evacuate from South Viet Nam in the face of the imminent takeover by the North Vietnamese. On April 24, 1975, the Plaintiff left Viet Nam aboard a military plane bound for Guam. The plane developed mechanical problems, however, and was diverted to the Philippines. Due to the priority status given Vietnamese refugees, the Plaintiff's civilian status, and the general confusion that followed in the wake of the collapse of the South Vietnamese regime, the Plaintiff was unable to return to the United States until October 18, 1975, when he was permitted to board a military flight from the Philippines to Travis Air Force Base in California.

After arriving at Travis, the Plaintiff flew to Tulsa, Oklahoma, and from Tulsa he made his way to Bristow. During the course of his stay in Bristow, the Plaintiff and his second wife, who apparently still remained in Sacramento, were divorced. The Plaintiff remained in Bristow until April 10, 1976, when he was hired by Lear Siegler, Inc., and moved to Universal City, Texas. Shortly before coming to Texas, the Plaintiff renewed his Oklahoma driver's license. The license—which the Plaintiff still uses—shows his address as 411 E. 8th Street, Bristow. The Plaintiff has remained in Universal City since April, 1976, with the exception of a visit to Bristow to see his mother, brother, and sister in January, 1977.[8] In August, 1977, the Plaintiff changed employers and began working at his current job with the D. Howard Co. at the San Antonio International Airport.

According to his sworn affidavit, the Plaintiff continued to regard himself as an Oklahoma citizen (presumably with a permanent address at 411 E. 8th Street, Bristow) until June 26, 1976. On that date he was married, for the third time, to Ms. Edna Brumbelow and he moved into Ms. Brumbelow's apartment in Universal City. Yet, despite his assertion that his citizenship changed on June 26, the Plaintiff failed to undertake a single one of the steps that are normally associated with a change in domicile. He did not exchange his Oklahoma driver's license for a Texas license even though his wife owned an automobile that he frequently drove; he did not regis-

---

7. The evidence is clear that the Plaintiff's family did not accompany him to Viet Nam although his wife did make at least one visit early in 1975.

8. The Plaintiff's father is deceased.

ter to vote in Texas;[9] he did not acquire a telephone or a listing in the phone book with his wife's number; he did not acquire any property in Texas or pay any taxes here; and, there was no testimony that he even opened a bank account in Texas. In short, he failed to plant a single root in this state, but rather acted in a fashion that was entirely consistent with his actions over the previous thirty years when he traveled from job to job, married twice and had five children, failed to establish roots in any location, and *maintained a permanent address at his parents' home in Bristow, Oklahoma.*

On August 27, 1976, the Plaintiff separated from his third wife. This suit was filed on October 12, 1976. The Plaintiff was divorced for the third time in April, 1977.

### III. Conclusions of Law

The purpose behind the above, rather lengthy statement of facts is certainly not to pass judgment on the Plaintiff's way of life. An individual should not be penalized for leading a mobile life style; however, the plain truth is that, under certain circumstances, a particular life style may serve to foreclose an individual's access to the federal courts. If one accepts as the rationale for creating diversity jurisdiction, the need to protect an out-of-state defendant from being subjected to a potentially biased forum[10]—a rather unlikely occurrence—it follows that, again in the words of Justice Frankfurter, "the policy of the statute conferring diversity jurisdiction upon the district courts calls for its strict construction." *Thomson v. Gaskill,* 315 U.S. 442, 446, 62 S.Ct. 673, 675, 86 L.Ed. 951 (1942); *see also Fawvor v. Texaco, Inc.,* 546 F.2d 636 (5th Cir. 1977). The district courts have been guided in their attempts to con-

strue the statute—strictly or otherwise—by a series of rules that have evolved over the years.

First, it must be recognized that not only does the burden of proof rest with the party alleging jurisdiction, but diversity must also be shown to have been present as of the date the suit was filed. *Gaines v. Dixie Carriers, Inc.,* 434 F.2d 52, 54 (5th Cir. 1970). Further, a court attempting to ascertain the citizenship of a party should give little weight to statements of intent made by that party when those statements are in conflict with the facts. *Hendry v. Masonite Corporation,* 455 F.2d 955 (5th Cir. 1972). Domicile[11] must be evaluated in terms of objective facts:

> Mere mental fixing of citizenship is not sufficient. What is in another man's mind must be determined by what he does as well as by what he says. 36 C.J.S., Federal Courts, § 56
>
> Residence in fact, and the intention of making the place of residence one's home are the essential elements of domicile. Words may be evidence of a man's intention to establish his domicile at a particular place of residence, but they cannot supply the fact of his domicile there. In such circumstances, the actual fact of residence and a real intention of remaining there, as *disclosed by his entire course of conduct,* are the controlling factors in ascertaining his domicile. [Emphasis added]

*Stine v. Moore,* 213 F.2d 446, 448 (5th Cir. 1954). Thus, the inquiry in this case must focus on whether the Plaintiff has met his burden of showing by objective facts that he was a citizen of Texas on October 12, 1976.

The Plaintiff concedes that he was a citizen of Oklahoma until June 26, 1976.[12] The

---

**9.** It should be noted, however, that Mr. Wasson testified that he has never voted or even registered to vote at any time or in any place during the course of his adult life.

**10.** And even this explanation does not shed any light on the reason why the *resident Plaintiff* is provided the option of choosing a federal forum.

**11.** For purposes of evaluating diversity, the terms "citizenship" and "domicile" are synonymous. *Hendry v. Masonite Corporation, supra.*

**12.** Throughout the evidentiary hearing defense counsel made much of this admission. However, even if the Plaintiff did not make this admission in a sworn affidavit, the court—for reasons that will be made clear in the opinion below—would have little difficulty in finding

principles governing determination whether a change in citizenship or domicile has occurred were cogently enumerated in *Mas v. Perry,* 489 F.2d 1396, 1399 (5th Cir. 1974):

A person's domicile is the place of "his true, fixed, and permanent home and principle establishment, and to which he has the intention of returning whenever he is absent therefrom . . ." [A] change of domicile may be effected only by a combination of two elements: (a) taking up residence in a different domicile with (b) the intention to remain there. [citations omitted]

 Applying that standard to the facts in this case, the court finds that the Plaintiff did not effect a change in citizenship from Oklahoma to Texas.[13] Although the Plaintiff satisfies the first half of the above test, he cannot satisfy his burden of proof in showing his intention to remain here. This finding has been reached on the basis of the following factors:

A. The Plaintiff's testimony taken in conjunction with his prior actions show that despite thirty-odd years of travel, marriage, and a semi-nomadic existence, he has continued to maintain his status as a citizen of Oklahoma.

B. This leads the court to lend little weight to the Plaintiff's assertion that his marriage to Edna Brumbelow should, without more, serve as *the* determinative factor. Despite two prior marriages, both of which produced children, the Plaintiff continued to regard Oklahoma as his permanent residence and there are

no *objective* factors to indicate the Plaintiff effected a permanent change in citizenship in 1976. This may be especially true in light of the fact that the Plaintiff and his wife separated two months before this suit was filed. Recognizing that a change in domicile could possibly—in theory—be effected in an instant, the court is still unable to place much weight in the Plaintiff's subjective statements. Given the Plaintiff's prior actions, his marriage to Ms. Brumbelow must be evaluated only in light of *all* the objective factors that surround it; most significantly, the fact that the Plaintiff took no actions toward cementing a permanent residence and, additionally, his marriage ended only two months after it began. The court cannot base a finding of citizenship solely on this Plaintiff's subjective statement that his domicile changed on wedding day number three.[14]

C. The objective facts—or perhaps, lack of them—lead to the inescapable conclusion that the Plaintiff did not change his citizenship: he did not change his driver's license; register to vote; enroll in a club, fraternal, or religious organization; join a union; own property; pay taxes; get a telephone or list a number; or even bank in Texas. His sole reason for residing in Texas was employment and the court finds that, Edna Brumbelow notwithstanding, the Plaintiff did not intend to establish a permanent residence in Texas. This is not the first time that a move undertaken for employment purposes, standing alone as the sole objective fact,

that the Plaintiff was not a Texas citizen *at least* until June 26, 1976. Thus the issue—change in domicile—would be the same regardless of the affidavit.

13. It may be possible to have a case in which a party is a citizen of the United States and yet is not a citizen of any state for diversity purposes. One of the aspects of diversity jurisdiction that "is inherently not founded in reason" is that a party who is consistently mobile or who travels from one job to another could find the door to a federal forum entirely closed should he seek to invoke diversity jurisdiction. *See* 13 Wright, Miller & Cooper, *Federal Practice and Procedure*: Jurisdiction § 3612 at 722. Under the facts of this case, however, the court believes

that were the issue under consideration whether the Plaintiff was an *Oklahoma* citizen the Plaintiff could meet his burden.

14. Of course, if this court were to find that the Plaintiff did effect a change in citizenship on June 26, 1976, the fact that he and his wife separated in August would have no significance upon that finding. Under those circumstances a possible question might be whether the Plaintiff had abandoned his *Texas* domicile between August, 1976, and October 12, 1976 a finding that the court would be unable to make. Thus, if the Plaintiff had been a citizen of Texas on June 26, 1976, he would still have been one on October 12, 1976.

has been held insufficient to establish a change in citizenship. *See*, e. g., *Spanos v. Skouras Theatres Corporation*, 235 F.Supp. 1 (S.D.N.Y.1964), *aff'd* 364 F.2d 161 (2nd Cir. 1966), *cert. denied* 385 U.S. 987, 87 S.Ct. 597, 17 L.Ed.2d 448 (1966).

This suit is therefore dismissed without prejudice. The Plaintiff remains free to bring suit in any state court—be it in Texas or any place else—in which he can get personal jurisdiction over the Defendant.

SO ORDERED, this 17th day of January, 1978.