**Kay H. SCOGGINS, Plaintiff-Appellant,**

v.

**Charles Eugene POLLOCK, M.D., John Edward Pollock, M.D., Medical Clinic, P.C., Arnold Adams, Hospital Authority of Wilkes Co., d/b/a Wills Memorial Hospital, Wills Memorial Hospital, Defendants-Appellees.**

No. 82–8765.

United States Court of Appeals, Eleventh Circuit.

March 19, 1984.

---

P. Russell Tarver, Gould H.K. Blair, Linda K. Browning, Birmingham, Ala., for plaintiff-appellant.

Gould B. Hagler, Duncan D. Wheale, J. Arthur Davison, Augusta, Ga., for C.E. Pollock, J.E. Pollock, Medical Clinic and Adams.

D. Field Yow, Paul H. Dunbar, Augusta, Ga., for Hosp. Authority and Wills Memorial.

Before HENDERSON and HATCHETT, Circuit Judges, and JONES, Senior Circuit Judge.

ALBERT J. HENDERSON, Circuit Judge:

The issue presented by this case is whether the appellant, Kay Scoggins, was domiciled in South Carolina or Georgia at the time she filed this medical malpractice suit in the United States District Court for the Southern District of Georgia. Diversity of citizenship is alleged as the basis of federal jurisdiction pursuant to the provisions of 28 U.S.C. § 1332. All of the appellees-defendants are residents of Georgia. The district court concluded that Mrs. Scoggins was also a citizen of Georgia and dismissed the case for lack of subject matter jurisdiction. Finding that the district court was not clearly erroneous, we affirm.

Mrs. Scoggins and her husband lived in Washington, Georgia. He was a high school principal and Mrs. Scoggins worked as a media specialist in a grade school. As a result of Mr. Scoggins' sudden death in October, 1979, Mrs. Scoggins filed suit in October, 1981 against the doctors, clinic and hospital that treated him.

Mrs. Scoggins remained in Washington, Georgia for over a year after her husband's death. Rev. Robert Murphy, who counseled with her, stated that he advised her not to do anything for at least a year until she overcame her grief. Rev. Murphy Deposition at 13. Still, Mrs. Scoggins contended that she decided soon after her husband's death to leave Washington and start a new life somewhere else. Mrs. Scoggins Deposition at 131.

In January or February 1981 Mrs. Scoggins applied for admission to a one year Masters in Librarianship program at the University of South Carolina. After her acceptance in mid-April, 1981, she notified her employer, Dr. Fred Dorminy, of her intent to resign her job in the Wilkes County school system. She rented an apartment in West Columbia, South Carolina and began her course of study in August, 1981. Later she accepted a job as a graduate assistant, a position open only to students. She neither sold nor rented her house in Washington, Georgia. She and her two children stayed there occasionally when they were in Washington. She claimed that she was holding on to the house until she graduated and found a permanent job and then would use the proceeds of the sale to purchase a new home. Mrs. Scoggins Deposition at 132–33.

The district court correctly noted that a change of domicile requires "[a] concurrent showing of (1) physical presence at the new location with (2) an intention to remain there indefinitely . . . ." Opinion at 4. *Mas v. Perry,* 489 F.2d 1396, 1399 (5th Cir.), *cert. denied,* 419 U.S. 842, 95 S.Ct. 74, 42 L.Ed.2d 70 (1974); [1] *Stine v. Moore,* 213 F.2d 446 (5th Cir.1954). The plaintiff bears the burden of proving her domicile by a preponderance of the evidence. *Vacca v. Meetze,* 499 F.Supp. 1089 (S.D.Ga.1980).

It is undisputed that Mrs. Scoggins was physically present in South Carolina when she filed this suit. She had rented an apartment, registered to vote, registered her car and obtained a South Carolina driver's license. After a summer vacation she apparently was in South Carolina full time once classes began. The second element of

---

[1] In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (*en banc*), the Eleventh Circuit Court of Appeals adopted as precedent the decisions of the former Fifth Circuit issued before October 1, 1981.

the test, her intent to remain in South Carolina indefinitely, however, presents a greater problem. The district court found that she initially went to South Carolina to undertake graduate studies and had not positively decided upon her residence after graduation. Citing 13 WRIGHT, MILLER & COOPER, *Federal Practice and Procedure* § 3613 (1975), the district court stated that out-of-state students are usually regarded only as temporary residents and "[i]t is therefore usually presumed that they retain their domicile at their former place of abode." Opinion at 10. Because Mrs. Scoggins lacked the requisite intent to remain in South Carolina and was still a Georgia domiciliary, the district court then dismissed the suit for lack of jurisdiction.

 The district court's finding of domicile will not be disturbed unless clearly erroneous. *Combee v. Shell Oil Co.*, 615 F.2d 698 (5th Cir.1980). We conclude that, although there is some conflicting evidence, we are not "left with the 'definite and firm conviction that a mistake has been committed.'" *Inwood Laboratories v. Ives Laboratories*, 456 U.S. 844, 855, 102 S.Ct. 2182, 2189, 72 L.Ed.2d 606, 616 (1982) (*quoting United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, 766 (1948)). There is sufficient evidence in the record to support the district court's finding.

Mrs. Scoggins clearly intended to leave Washington, Georgia, but her plans after that were more nebulous. Instead of consistently exhibiting an intent to remain in South Carolina, there were many indications that she considered moving to Florida or even returning to Georgia. Rev. Murphy stated that he discussed cities like Atlanta with Mrs. Scoggins and that "[s]he did name to me on more than one occasion that she was having thoughts of perhaps teaching in Florida." Rev. Murphy Deposition at 15. Further,

> she never indicated to me that she had made any plans to settle in South Carolina, nor did she say she didn't. The fact is, she didn't exclude Georgia really in her conversations to me.

*Id.* at 24. Dr. Dorminy, the county school superintendent in Wilkes County, testified by deposition that Mrs. Scoggins "indicated that when she finished her work at the University of South Carolina, that Florida was a possibility." Dorminy Deposition at 17. Dr. Dorminy additionally remarked that she told him she was unsure where she would go after graduation and she did not say anything to him suggesting that she considered South Carolina as her permanent home. *Id.* at 13, 17.

Mrs. Scoggins herself testified that her plans at the time were unsettled. "My intentions were to leave Georgia. I really didn't know where I was going, but I intended to leave Washington. I did not intend to live there any longer. I had options of where to go." Mrs. Scoggins Deposition at 160. Initially, it appears that she went to South Carolina solely to pursue her graduate studies. The University of South Carolina offered one of the few accredited programs in which she was interested. When asked when she decided to move to South Carolina, she replied "[a]fter I received my acceptance from the University of South Carolina." *Id.* at 134. Also,

> Q. The only reason you went was to go to school then—you didn't go to Columbia for any other reason, except to go to the University of South Carolina, is that correct?
>
> A. That's where I was accepted, so that's why I am in Columbia, South Carolina.

*Id.* at 158.

The former Fifth Circuit Court of Appeals considered this precise question in *Mas v. Perry*, 489 F.2d 1396 (5th Cir.), *cert. denied*, 419 U.S. 842, 95 S.Ct. 74, 42 L.Ed.2d 70 (1974). Mr. and Mrs. Mas were graduate students at Louisiana State University and worked as graduate assistants. Mrs. Mas previously lived in Mississippi. The couple moved to Illinois but planned to return to Louisiana for Mr. Mas to complete his doctorate degree. They each sued their former landlord who was a Louisiana resident. He challenged diversity jurisdiction over Mrs. Mas' claim, alleging that Mrs. Mas also was

domiciled in Louisiana. The court rejected this argument, stating:

> Mrs. Mas' Mississippi domicile was disturbed neither by her year in Louisiana prior to her marriage nor as a result of the time she and her husband spent at LSU after their marriage, since for both periods she was a graduate assistant at LSU. Though she testified that after her marriage she had no intention of returning to her parents' home in Mississippi, Mrs. Mas did not effect a change of domicile since she and Mr. Mas were in Louisiana only as students and lacked the requisite intention to remain there.

*Id.* at 1400.

 *Mas* is directly on point. Although Mrs. Scoggins may now intend to remain in South Carolina, we must look to the facts as of the date she filed this suit. She initially moved to South Carolina as a student. Even if she did not intend to return to Georgia, she was undecided about her future plans. Her domicile before she moved to South Carolina continued until she obtained a new one. Georgia remained Mrs. Scoggins' domicile for diversity purposes. We also note that the Court of Appeals for the Eighth Circuit, also in a medical malpractice case, dismissed the diversity suit of a student in Ohio against a Missouri doctor, holding that the student retained his Missouri domicile because he lacked the intent to remain in Ohio. *Holmes v. Sopuch,* 639 F.2d 431 (8th Cir.1981). The district court's finding that Mrs. Scoggins was a Georgia domiciliary is supported by the record and is not clearly erroneous.

Mrs. Scoggins also asserts that the district court abused its discretion by denying her motion to amend her complaint, purportedly to cure any jurisdictional defects. Such motions usually are granted liberally. Fed.R.Civ.P. 15(a). *See Dussouy v. Gulf Coast Investment Corp.,* 660 F.2d 594 (5th Cir.1981). Yet because the district court found there was no diversity jurisdiction, granting the motion would not have affected the outcome of the case.

For the foregoing reasons, the judgment of the district court dismissing the complaint for lack of jurisdiction is AFFIRMED.