Stanley J. SIMMONS and Patricia Simmons and Stanley J. Simmons as Personal Representative of the Estate of Valerie Wynn Aken, Deceased, Plaintiffs,

v.

SKYWAY OF OCALA; Rockwell International Corporation; Heady Aircraft, Inc. d/b/a Precision Aero Engines; Teledyne Continental Motors Gulfstream American Corporation and Gulfstream Aerospace Corporation, Defendants,

v.

GULFSTREAM AEROSPACE CORPORATION, an Oklahoma Corporation, Third-Party Defendant and Fourth-Party Plaintiff,

v.

Betty L. LOVELL, as Personal Representative of the Estate of Stanley R. Lovell, Deceased; Sugar Mountain Development Corporation; Steve L. Grey; Robert Burtzloff; and Don Wayne Taylor, Fourth-Party Defendants.

Civ. A. Nos. CV683–54, CV683–63.

United States District Court,
S.D. Georgia,
Swainsboro Division.

July 2, 1984.

Edwin Marger, Atlanta, Ga., Louis Vernell, North Miami Beach, Fla., George F. Farrell, Speiser, Krause & Madole, Washington, D.C., for plaintiffs.

Eric D. Griffin, Jr., Donald R. Andersen, Phillips & Mozley, E.A. Simpson, Jr., F.C. Schenck, Powell, Goldstein, Frazer & Murphy, T. Cullen Gilliland, M. Scott Barksdale, Gray, Gilliland & Gold, P.C., Atlanta, Ga., for defendants.

James A. Eichelberger, Randall H. Davis, Neely & Player, Atlanta, Ga., for Betty L. Lovell, as personal representative of estate of Stanley R. Lovell, deceased; Sugar Mountain Development Corp.; Steve L. Grey & Robert Burtzloff, fourth-party defendants.

## ORDER

BOWEN, District Judge.

Defendant Gulfstream Aerospace Corporation, an Oklahoma corporation, moves the Court to dismiss these consolidated actions, CV683–54 and CV683–63, for want of jurisdiction. Both cases are wrongful death actions arising out of the same occurrence, an airplane crash in which the plaintiffs' daughter was killed. The parties are identical in both suits; the only distinction between them relevant to this ruling is that the second suit, CV683–63, arose in this Court one month after the first, on defendant Rockwell International's petition for removal from the Superior Court of Jefferson County, Georgia. The cases were consolidated in this Court by order of February 8, 1984. For purposes of deciding this motion, the Court will use as the relevant date of filing suit the date on which CV683–54 was filed, August 10, 1983. The complaint in CV683–54 alleges that the defendants are citizens of states other than North Carolina, including Florida, California, and Alabama, and that plaintiffs Stanley J. Simmons and Patricia Simmons are citizens of North Carolina, thus jurisdiction is based on diversity. 28 U.S.C. § 1332. The petition for removal of CV683–63 also alleges diversity jurisdiction. The defendant does not dispute the allegations of its own citizenship or of the necessary amount in controversy, but contends that plaintiffs are citizens of Florida, thereby destroying com-

plete diversity and the alleged basis for jurisdiction.

 Complete diversity of plaintiffs and defendants is required under 28 U.S.C. § 1332. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806); *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir.1974). The burden of proof of facts necessary for jurisdiction is on the party asserting jurisdiction. *Mas*, 489 F.2d at 1399; *Wasson v. Northrup Worldwide Aircraft Services, Inc.*, 443 F.Supp. 400, 401 (W.D.Tex.1978). When a party asserts a change in domicile, that party must prove the change. *Hendry v. Masonite Corporation*, 455 F.2d 955, 956 (5th Cir.1972); *Stine v. Moore*, 213 F.2d 446, 447 (5th Cir.1954). The Court rejects defendant's argument that the burden of proof of changed domicile must meet the "clear and convincing" evidence standard of proof, according to *Avins v. Hannum*, 497 F.Supp. 930 (E.D.Pa.1980). This circuit has not adopted the language of the cases cited by defendants. A recent decision in our Circuit based on facts similar to those now before the Court stated explicitly that the plaintiff, who alleged a change in her domicile which would create diversity, was required to prove her domicile by a preponderance of the evidence. *Scoggins*, 727 F.2d 1025 at 1026; *Vacca v. Meetze*, 499 F.Supp. 1089, 1090 (S.D.Ga. 1980).

 For the purposes of diversity jurisdiction, citizenship is the same thing as domicile. *Stine v. Moore*, 213 F.2d at 448. Domicile is "that place where a man has his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." *Stine*, 213 F.2d at 448, *cited in Mas*, 489 F.2d at 1399. Diversity of citizenship, or domicile, must exist at the time the suit is filed in order for jurisdiction to be proper. *Smith v. Sperling*, 354 U.S. 91, 93 n. 1, 77 S.Ct. 1112, 1113 n. 1, 1 L.Ed.2d 1205 (1957); *Mas*, 489 F.2d at 1399; *Wasson*, 443 F.Supp. at 404; *Rivera v. Chapa*, 233 F.Supp. 428, 430 (S.D.Tex. 1964). Subsequent changes in the domicile of either party does not affect jurisdiction.

*Smith v. Sperling*, 354 U.S. at 93, 77 S.Ct. at 1113; *Mas*, 489 F.2d at 1399. However, there is a test for a change in domicile made *before* a lawsuit is filed which guides the Court in determining the true domicile of the parties when diversity is asserted or contested. An effective change in domicile is accomplished by (1) the act of taking up residence in a different domicile, with (2) the intent to remain there. *Mas*, 489 F.2d at 1399; *Wasson*, 443 F.Supp. at 405.

In this case, the defendant contends that plaintiffs had not established domicile in North Carolina at the time the case was filed, but remained domiciliaries of Florida. The deposition of Stanley J. Simmons showed that plaintiffs resided in Florida from 1955 until May, 1981. *Deposition of Stanley J. Simmons*, 72–74 [hereinafter referred to as "Deposition"]. Mr. Simmons testified that, about five years ago, he and his wife began to discuss retiring to a home outside of Florida, and that, in August, 1980, they visited North Carolina and decided to retire there. Deposition, 203–04. The significant appeal of North Carolina was that the plaintiffs' daughter and son-in-law lived there and owned interest in property near a ski resort; the Simmons anticipated living near their daughter and perhaps becoming involved, to some extent, in their daughter's business in North Carolina. Deposition, 117, 178–85, 204. In August, 1981, their daughter and son-in-law were killed in an airplane crash which is the subject of this wrongful death action. At that time, the Simmonses had not sold their Florida home, and they found it necessary to travel between North Carolina and Florida several times between the date of their daughter's death and August 10, 1983, the date on which this suit was filed, in order to attend to legal matters involving their daughter's estate. Deposition, 76–88.

 The Court's task is to determine whether the Simmonses had, both by act and intention, established legally effective domicile in North Carolina by August 10, 1983, when this suit was filed. Several objective factors indicate whether domicile

has been established by act or intent, for statements of intent can be given little weight if they conflict with objective facts. *Hendry v. Masonite Corporation*, 455 F.2d at 956; *Stine v. Moore*, 213 F.2d at 448; *Garner v. Pearson*, 374 F.Supp. 580, 589 (M.D.Fla.1973). Those factors include: location of employment; home ownership and ownership of other real property; location of one's household furnishings; registration and title of one's automobiles; driver's licensing; voter registration; payment for utilities; banking; acquiring a telephone number and listing it; receiving mail; and establishing membership in local professional, civic, religious, or social organizations. *Hendry*, 455 F.2d at 956; *Stine*, 213 F.2d at 447–48; *Wasson*, 443 F.Supp. at 402–03, 405; *Bray v. South Texas Tire Test Fleet, Inc.*, 323 F.Supp. 161 (W.D.Tex.1971); *Rivera*, 233 F.Supp. at 430.

 The Court stresses that diversity and jurisdiction are determined on the basis of the facts at the time the suit was filed, and subsequent facts or changes in the domicile of either party do not affect jurisdiction. *Smith v. Sperling*, 354 U.S. at 93, 77 S.Ct. at 1113. This means that certain factors enumerated by the defendant as indicative of domicile must be ignored because they are outside the relevant time period. The defendants extensively questioned Mr. Simmons at his deposition concerning facts relevant to jurisdiction. Many of their questions were not date-specific or were phrased in present tense; it is not clear that the facts discovered in deposition are limited to the time period up to the date on which the Simmonses filed suit. However, it is clear from much of the deposition that Mr. Simmons' answers described habits or a regular course of conduct that existed at the time suit was filed, although they may also continue to the present. In the Court's discussion which follows, all present tense descriptions refer to habits or courses of conduct by the Simmonses which existed at the time they filed suit. The Court has scrutinized the record carefully to insure that the facts listed below existed at the relevant date of August 10, 1983, when suit was filed.

Mr. Simmons considers himself retired. Deposition 181, 200. However, his income derives from businesses which are located in or run from an office in Florida, which is in a building owned by Mr. Simmons. Deposition, 11, 18, 186, 105. Mr. Simmons has been licensed to do business in Florida but never in North Carolina. Deposition, 174. He testified that his presence is not necessary for his business to operate smoothly, although he does spend time in Florida conducting business, Deposition, 81–82, 181, 210–14, 222, and does a small amount of business with his Florida office by telephone from North Carolina. Deposition, 222. The Simmonses pay federal income taxes from their Florida address. Deposition 123. They own a home in Florida, for which they claimed homestead exemptions in 1981 and 1982, and which they do not plan to sell. Deposition, 151–55, 175–76. They keep household furnishings, wardrobes, and personal and business records on these real properties in Florida. Deposition, 53, 18. They also own a condominium in North Carolina, which they purchased furnished, and where they also keep wardrobes. Deposition, 51–53, 215–16. During late December through February, the Simmonses have the condominium association lease their condominium to ski resort visitors, while they return to Florida for the warmer weather. Deposition, 156–58, 220. The Simmonses own no other real property in North Carolina. Deposition, 124. They pay taxes on the North Carolina property, but do not claim a homestead exemption on it because Mr. Simmons is not aware of such an exemption. Deposition, 152, 187. The Simmonses own or have owned several cars, all of which have been registered in Florida. The only car bearing a North Carolina tag which they have owned was the car owned by their daughter before her death; the Simmonses have had its North Carolina tag replaced with a Florida tag. Deposition, 133–34, 142.

Mr. Simmons registered to vote in North Carolina on July 23, 1982, but has not exercised the franchise. He testified that he

has not voted at all since 1960, when he voted in Florida. Deposition 125. Mr. Simmons carries a Florida driver's license, and has never had a North Carolina driver's license. Deposition 145, 147. The Simmonses pay bills for utilities in North Carolina and Florida. Deposition, 195–96, 219. The Simmonses have no bank accounts in North Carolina, but they have bank accounts in Florida and credit cards drawn from Florida banks. Deposition, 121–22, 190. Their North Carolina home has a telephone number and a directory listing. Deposition, 184. The Simmonses regularly receive mail, including magazine subscriptions, at their Florida address, although they occasionally have their mail forwarded to North Carolina or held for them in Florida. Deposition, 23–26, 176, 197. Mr. Simmons testified that he is not a "joiner" and that, aside from membership in a professional organization in Florida before he retired from teaching, his last membership was a one-year church membership in Florida in 1956. Consequently, neither he nor his wife belongs to any organizations in North Carolina or Florida. Deposition, 171–73. This Court finds it significant that the couple's lawyers, accountants, and doctors are in Florida, except for one North Carolina lawyer hired to assist with their daughter's estate matters. Deposition, 35–36, 44–50, 168, 170–71. Finally, and quite significantly, Mr. Simmons filed a petition against Dade County, Florida, in which he alleged that he was a resident of Dade County, Florida. The petition was notarized on February 2, 1983, nearly two years after the Simmonses moved to North Carolina, and six months before this suit was filed. Exhibit B to Supplement to Consolidated Motion of Gulfstream Aerospace Corporation, an Oklahoma Corporation, to Dismiss, or, Alternatively, Stay Proceedings; Deposition, 177–78.

Taken together, these factors weigh heavily against the plaintiffs' assertion that they have established domicile in North Carolina, even by act alone. The Court is reluctant to emphasize Mr. Simmons' continuing business interests in Florida as indicative of domicile. Cases dealing with the converse set of facts, in which a party asserts that he has established domicile in a new state by the act of moving to employment in the new state, tend to minimize the significance of a party's employment alone as a factor determining domicile. *Hendry v. Masonite Corporation*, 455 F.2d 955; *Wasson v. Northrup Worldwide Aircraft Services, Inc.*, 443 F.Supp. at 405–06; *Bray v. South Texas Tire Test Fleet, Inc.*, 323 F.Supp. at 161–62; *Jardine v. Intehar*, 213 F.Supp. 598, 599 (S.D.W.Va. 1963). But Mr. Simmons' long-term business interest operating exclusively out of a Florida office is significant, if for no other reason than the fact that Mr. Simmons owns the real property in Florida from which his business operates. The Simmonses have maintained their long-term ownership of residential real property in Florida and keep personal furnishings there. They do not lease the Florida premises; rather, they reside there when the North Carolina condominium is leased out for the winter months. Weighing heaviest of all in favor of Florida domicile is the grab-bag of indicia having to do with everyday life. Plaintiffs' car registration, driver's licensing, banking, regular mailing address for magazine subscriptions and the like, and all personal and business records are in Florida, not to mention the fact that they obtain professional services from Florida, and not North Carolina, doctors, lawyers and accountants.

These facts all weigh heavily against Mr. Simmons' statements of intent to establish domicile in North Carolina. Yet, even if the Court found that the question of physical residence were too close to call on these facts, this case would be likely to turn on the question of plaintiffs' intent. If we accept their statement of intent as true, the Simmonses considered making closer connection with the state of North Carolina at least as early as 1980. They acted on that intent in 1981. Here is the irony: in 1981, the same event that precipitated this lawsuit, bereft the Simmonses of their professed reason for their intent to move to North Carolina. When their daughter and

son-in-law died, a full two years before this lawsuit was filed, the Simmonses no longer had that compelling reason to live in North Carolina. As Mr. Simmons said, "My plans involved them. Without them I didn't have the same plan or any plan." Deposition, 186. Nor is it clear that before the tragic airplane crash, the Simmonses had expressed or manifested an intent to establish domicile in North Carolina. The fact that they lived there in 1981 and for some periods of time after 1981 is no counter weight to other facts. Before and after 1981, the Simmonses never effected that severing of ties to their Florida domicile that would have evidenced their intent to move from Florida to North Carolina or any other state. Their domicile in 1981, and through August, 1983, when this lawsuit was filed, continued to be in Florida.

The Court does not take plaintiffs' pleading of diversity jurisdiction to be sham. The Simmonses clearly had significant connection to North Carolina before this lawsuit was filed, and even before the airplane crash from which the suit arose. No one desired or expected that event which altered the Simmonses' future. It would be harsh, indeed, to chastise the plaintiffs for manufacturing domicile in North Carolina, when they had legitimate connection to the state. The Court finds, simply, that the facts do not show that the Simmonses had changed their domicile, by act or intent, on the date on which they filed this suit. *Scoggins v. Pollock,* 727 F.2d 1025; *Mas v. Perry,* 489 F.2d 1396. When a party has not effectively changed his domicile, his former domicile remains the legally controlling one. *Scoggins,* 727 F.2d at 1028; *Mas,* 489 F.2d at 1400. When this suit was filed, the Simmonses thus remained domiciled in Florida, where defendants in this case are domiciled, also. This destroys complete diversity between plaintiffs and defendants, and prevents the Court from exercising diversity jurisdiction over these parties.

Though these consolidated cases are the same in almost every respect, they arose in this Court by different procedures. They require different holdings. *See McKenzie v. United States,* 678 F.2d 571 (5th Cir. 1982). The first case, CV683–54, which was originally filed in this Court, is not properly before the Court for lack of jurisdiction. Defendant's motion to dismiss for lack of subject matter jurisdiction is therefore GRANTED as to CV683–54. The second case, CV683–63, arrived here by removal from the Superior Court of Jefferson County, Georgia. The Court finds that it has no original or removal jurisdiction for lack of diversity, and it DENIES defendant's motion to dismiss CV683–63, finding it proper to REMAND that case to the Superior Court of Jefferson County. The Clerk of Court is directed to close case number CV683–54, and to remand case number CV683–63 to the court in which it originated.

■ The Court is aware that Federal Rule of Civil Procedure 54 mandates that costs are allowed to the prevailing party. Fed.R.Civ.P. 54(d). *Gilchrist v. Bolger,* 733 F.2d 1551 (11th Cir.1984). However, the plaintiffs and defendant Rockwell International created the need for this ruling. Plaintiffs improperly alleged diversity jurisdiction, and defendant Rockwell International, relying on plaintiffs' pleadings, improvidently removed the state court suit. Defendant Gulfstream Aerospace Corporation, an Oklahoma corporation, is the movant for dismissal. The Court notes that Rockwell International and the Oklahoma Gulfstream corporation are represented by the same law firm for this case. It would be ignoring reality to allow costs for Gulfstream, when its counsel, in the posture of counsel for Rockwell International, made one of the errors which wrongfully placed this action in federal court. Each party will bear its own costs in this matter.