**Sandra B. DUFF and Patrick Duff, Plaintiff,**

**v.**

**Rick L. BEATY, Crna and the Hospital Authority of Walker, Dade and Catoosa Counties d/b/a Hutcheson Medical Center, Defendant.**

**Civ. A. No. 4:91–CV–209–HLM.**

United States District Court, N.D. Georgia, Rome Division.

Oct. 2, 1992.

David Sewell Bills, Tammy Marie Griner, The Keenan Ashman Firm, Atlanta, Ga., Don C. Keenan, Savannah, Ga., for plaintiff.

**334**

William H. Boling, Jr., Chesley Wade Monk, II, Shaw Maddox Graham Monk & Boling, Rome, Ga., Dennis D. Watson, Watson & Dana, Lafayette, Ga., for defendant.

## ORDER

HAROLD L. MURPHY, District Judge.

This case is before the Court on Defendant Beaty's Motion to Dismiss the Complaint for Lack of Subject Matter Jurisdiction. Plaintiff filed this medical malpractice case alleging that jurisdiction existed because of diversity among the parties. Defendant Beaty claims that he is a domiciliary of Tennessee, as is Plaintiff, and, consequently, total diversity does not exist. On September 30, 1992, the Court held a hearing to determine the domicile of Defendant Beaty at the time Plaintiff filed the lawsuit.

The incident which gave rise to this case occurred on October 19 and 20, 1989, when Plaintiff was in the process of giving birth. The facts surrounding the particular incident in question are not relevant to this motion and, therefore, will not be set out in detail. The facts which do concern this motion are (1) in March or April 1990, Defendant separated from his wife and moved to Chattanooga, Tennessee, (2) Defendant has continuously lived in Tennessee and intends to live there indefinitely and, (3) Plaintiff filed this action in this Court on October 8, 1991, claiming diversity jurisdiction because she contends that even though Defendant may have moved his residence to Tennessee, his domicile remained in Georgia.

Defendant's motion raises the issue of whether this Court has jurisdiction of this case under 28 U.S.C. § 1332. Section 1332 states that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds ... $50,000 ... and is between—citizens of different states." 28 U.S.C. § 1332(a)(1). In this case the amount in controversy is not contested; rather, the defendant claims that diversity of citizenship does not exist.

■ It is axiomatic that there must exist total diversity of citizenship for a

Plaintiff to make use of a federal court's diversity jurisdiction. *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). Diversity must exist at the time the suit is filed; it is unimportant that the diversity existed at the time the incident occurred. *Mollen v. Torrance,* 22 U.S. (9 Wheat) 537, 539, 6 L.Ed. 154 (1824). The determination of citizenship for diversity purposes is controlled by federal law. *Mas v. Perry,* 489 F.2d 1396, 1399 (5th Cir.1974), *cert. denied,* 419 U.S. 842, 95 S.Ct. 74, 42 L.Ed.2d 70 (1974). Citizenship means the same as domicile in diversity jurisprudence. *Simmons v. Skyway of Ocala,* 592 F.Supp. 356, 359 (S.D.Ga.1984). Residence, by itself, is insufficient. *Stine v. Moore,* 213 F.2d 446, 448 (5th Cir.1954). " 'Domicile' is not necessarily synonymous with 'residence' ... and one can reside in one place but be domiciled in another. For adults, domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Mississippi Choctaw Indian Band v. Holyfield,* 490 U.S. 30, 48, 109 S.Ct. 1597, 1608, 104 L.Ed.2d 29 (1989). A presumption exists that a person's domicile continues until that party proves that his/her domicile has changed. *Mitchell v. United States,* 88 U.S. (21 Wall.) 350, 353, 22 L.Ed. 584 (1874); *McDougald v. Jenson,* 786 F.2d 1465, 1483 (11th Cir.1986), *cert. denied,* 479 U.S. 1001, 107 S.Ct. 614, 93 L.Ed.2d 611 (1986).

■ The party wishing to assert diversity jurisdiction bears the burden of establishing that diversity exists. *Cameron v. Hodges,* 127 U.S. 322, 8 S.Ct. 1154, 32 L.Ed. 132 (1888). When a court holds an evidentiary hearing on the question of diversity, the party asserting jurisdiction, in this case the Plaintiff, has to prove by a preponderance of the evidence that diversity exists. *Chalwest (Holdings) Ltd., v. Ellis,* 924 F.2d 1011 (11th Cir.1991). However, it is incumbent upon the party asserting a change in domicile to prove that a change indeed occurred. *Mitchell,* 88 U.S. (21 Wall.) at 353; *McDougald,* 786 F.2d at 1483. Consequently, there are shifting burdens at work in this case.

In the case sub judice, Plaintiff must prove that diversity exists. Plaintiff can meet her burden by showing that Defendant at one time was a domiciliary of Georgia and that she is a domiciliary of Tennessee. Because a presumption exists that a domicile continues until it is proven changed, *McDougald,* 786 F.2d at 1483, and a presumption exists against a newly acquired domicile and in favor of the "old" domicile, *Heinz v. Havelock,* 757 F.Supp. 1076, 1079 (C.D.Cal.1991), after Plaintiff meets her burden, the burden shifts to Defendant to prove that although his domicile may have been Georgia in the past, his domicile on the day Plaintiff filed the lawsuit had changed to Tennessee.

▆▆▆ To show that his domicile has changed, Defendant must demonstrate (1) a physical residence in the "new" state and, (2) an intent to stay in that "new" state for an indefinite period of time. *Mitchell,* 88 U.S. (21 Wall.) at 353; *Boston Safe Deposit and Trust Co. v. Morse,* 779 F.Supp. 347, 349 (S.D.N.Y.1991). Defendant must show this change by a preponderance of the evidence. *Simmons v. Skyway of Ocala,* 592 F.Supp. 356, 359 (S.D.Ga.1984) (Plaintiff claiming change in domicile must establish change by preponderance of evidence, not clear and convincing evidence).[1] He must show that the new state has become his "true, fixed and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." *Mas,* 489 F.2d at 1399. The Court need not find an exact specific date upon which the intent was formulated as long as the Court finds that the intent was formed on a day prior to the filing of the lawsuit and that the intent existed on the date the action was filed. *District of Columbia v. Murphy,* 314 U.S. 441, 455–56, 62 S.Ct. 303, 309–10, 86 L.Ed. 329 (1941).

▆▆▆ This intent can be proven by any number of objective factors, e.g. payment of taxes, procurement of driver's license, exercise of voting rights, moving of personal belongings, ownership or rental of property, location of family, place of employment, etc. *Noreiga v. Lever Bros. Co. Inc.,* 671 F.Supp. 991, 993 (S.D.N.Y.1987); *Heinz,* 757 F.Supp. at 1079; *Simmons,* 592 F.Supp. at 356. Subjective comments and statements are to be given less weight when they conflict with objective facts. *Welsch v. American Surety Co.,* 186 F.2d 16, 18 (5th Cir.1951); *Simmons,* 592 F.Supp. at 359. No single factor is of overriding importance and the court should examine the entire course of a person's conduct in determining domicile. *Noreiga,* 671 F.Supp. at 994.

▆▆▆ Using the above enunciated standard the Court determines that on the date the instant lawsuit was filed, Defendant Beaty was a domiciliary of Tennessee. Although there exists evidence that Defendant did not do all he could have done to demonstrate to a third party that he had indeed changed his domicile, the evidence is sufficient to demonstrate that on the date in question his domicile had changed.[2] The

---

1. The Court is aware of the Southern District of New York's ruling in *Boston Safe Deposit and Trust Co. v. Morse,* 779 F.Supp. 347 (S.D.N.Y. 1991), and the other cases cited by Plaintiff, stating that a defendant trying to prove a change of domicile must do so by clear and convincing evidence. *Id.* at 349. However, the Second Circuit precedent upon which the *Boston* Court relies is based on an interpretation of New York state law and not federal law which is what this Court looks to in determining diversity. *See Mas,* 489 F.2d at 1399. Moreover, the Supreme Court cases cited as support for its conclusion do not stand for the proposition stated. Instead, those cases only reiterate the basic jurisprudence associated with a determination of whether a party changed his domicile. Those cases do not establish the requisite burden of proof necessary to prove that a party has indeed changed his domicile. *See District of Columbia v. Murphy,* 314 U.S. 441, 62 S.Ct. 303, 86 L.Ed. 329 (1941); *Mitchell v. United States,* 88 U.S. (21 Wall.) 350, 22 L.Ed. 584 (1875). In addition, the line of cases cited by Plaintiff in her brief in opposition to the motion to dismiss, can be traced to one errant line in a 1966 district court opinion from the Eastern District of Pennsylvania which is not supported by any analysis, precedent or authority except for a lone textbook. *See Hamlin v. Holland,* 256 F.Supp. 25, 27 (E.D.Pa.1966).

2. The Court recognizes Plaintiff's counsel's efforts in trying to ascertain Defendant's domicile. Plaintiff looked in all the logical places and went through the correct procedure to determine the domicile; however, *his efforts do not*

main evidence upon which this Court relies is Defendant's testimony at the hearing regarding his marital discord. Defendant has been married for over twenty years and regardless of the reasons why he left his marriage, it is apparent to this Court that on the day he left he intended a permanent separation.[3]

Plaintiff's emphasis on the fact that no formal legal documents have been filed to date is misplaced. Defendant has acted very responsibly in not abandoning his family by maintaining his financial responsibility for their welfare. Defendant did not change the deed to his house or any of the bills related to the house because he believed that the difficulties involved outweighed the benefits to be procured. *Deposition of Judy Beaty* at 20. There was no need to change these documents prior to a legal separation because his wife was willing to forward his mail to him. Furthermore, it is evident that both parties agreed that Mrs. Beaty was and is unable to be financially independent at this time. If the separation had not been as amicable as it appears to have been, Defendant probably would have completed all the required steps to change over the necessary papers. But due to his concern for his family and the absence of a pressing desire to expedite the final separation, Defendant did not feel compelled to change all the indicia of domicile so that an objective observer could tell he changed his domicile.[4]

Defendant did complete a number of transactions which objectively show his intention to change his domicile. Defendant changed the address for his personal bills as he got them, therefore, negating the need to go to the Postmaster in Ringgold and have them officially changed. He moved all his personal belongings to Chattanooga and away from Ringgold, inquired about the tax benefits of moving to Tennessee, purchased a boat to use a residence and docked that boat in at the Lakeshore Marina in Chattanooga. As the need arose, for the most part, Defendant told people of his change in lifestyle and of his move to Tennessee. Moreover, Defendant has only returned to the family home two or three times over the past two and a half years since the separation.

The Court is aware that Defendant did not do everything he should have done to show an objective third party that he had in fact moved his domicile. For example, he did not change his driver's license, he did not change his car registration, he did not register to vote in Tennessee (he was never registered to vote in Georgia, however), he did not join civic clubs in Chattanooga (he did not join civic clubs in Georgia, either), he did not notify his hospitals or the nursing boards of his change of address and he did not publicize his intent to change his residence and domicile. However, considering the reason for his move and his marital situation, the Court can easily understand why he hesitated changing his address with the relevant hospitals and boards and why he did not publicize his separation.[5] Any attempt to contact him at his former residence would be relayed to him through his wife and children so he did not feel compelled to notify immediately

change the fact that Defendant changed his domicile prior to the filing of the lawsuit.

3. The fact that Mrs. Beaty was or is unsure of the permanency of her marital status does not change or affect this Court's determination that Defendant considered and still considers the separation permanent. In fact, when Mr. Beaty originally left his house, Mrs. Beaty did not even know where he went or where he was living. *Deposition of Judy Ann Beaty* at 6. In addition, Mrs. Beaty stated that the couple has not even discussed the possibility of reconciling their marriage. *Id.* at 6 & 26. Finally, Mrs. Beaty admitted that Mr. Beaty's contacts with the marital home have dwindled to an almost nonexistent level. *Id.* at 10 & 17.

4. Plaintiff makes no allegation, and the Court specifically does not find, that Defendant's move and change in lifestyle was in any way affected or caused by the present suit. Defendant did not change his domicile so that he could destroy diversity. *See McDougald,* 786 F.2d at 1481. (Motive as to why a party moved is immaterial, provided the move is bona fide.)

5. Defendant claims that he was unaware of the requirements placed upon someone when they move their residence. As Plaintiff has not refuted this testimony, the Court concludes that Defendant's failure to abide by the pertinent regulations was a mere oversight on his part and not any sinister scheme to mislead someone who was searching for his whereabouts.

these people of his change in address. Furthermore, his move, although to another state, was not one of extreme distance of difficulty, therefore, he could be contacted rather easily in case of an emergency. Finally, although the objective factors are strong on both sides of the issue, the Court concludes that Defendant moved his residence to Tennessee and that he intended to live in Tennessee for an indefinite period of time. Consequently, when the Court considers the total circumstances surrounding Defendant's situation and the reasons behind Defendant's actions, the Court concludes that on the date Plaintiff filed this lawsuit Defendant had changed his domicile from Georgia to Tennessee and, therefore, diversity jurisdiction does not exist and this case is dismissed.

Accordingly, the Court GRANTS Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and DISMISSES this case.

IT IS SO ORDERED.